Lena R. SCHNUCK, Plaintiff–Appellant,

v.

CITY OF SANTA MONICA,
Defendant–Appellee.

No. 89–55283.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1990.

Decided June 4, 1991.

---

Robert J. Jagiello, Jagiello & Pech, San Bernardino, Cal., for plaintiff-appellant.

Barry A. Rosenbaum, Deputy City Atty., Santa Monica, Cal., for defendant-appellee.

Susan D. Pfann, Deputy City Atty., Los Angeles, Cal., for amicus City of Los Angeles.

Before CANBY, KOZINSKI and LEAVY, Circuit Judges.

CANBY, Circuit Judge:

Plaintiff Lena Schnuck brought this action attacking the Santa Monica, California, Rent Control Law on several constitutional grounds. The district court entered summary judgment against her, and she appeals. We affirm.

## FACTS

In 1979, Santa Monica voters adopted by initiative an amendment to the City Charter imposing a comprehensive rent control system within the City. Santa Monica City Charter, Article XVIII, § 1800 et seq. This Rent Control Law, as we will call it, defined certain rental properties as controlled units, and limited the rents that could be charged for those units. The Law also prescribed grounds for eviction. It authorized a landlord to evict a tenant from a controlled rental unit to permit the landlord to occupy the unit herself. It did not authorize such an eviction for the purpose of owner occupancy, however, if the landlord already resided elsewhere on the property. Rent Control Law § 1806(h)(2).

Schnuck, an elderly widow, owns an eight-unit apartment building in Santa Monica. She lives in a third-floor apartment and rents out the others. The rented units are subject to the Rent Control Law. After Schnuck suffered a stroke in July 1987, she desired to move to a first-floor apartment so that she could avoid climbing stairs. Schnuck's daughter accordingly asked a first-floor tenant whether she would agree to move so that Schnuck might move in. The tenant responded that she would exchange apartments with Schnuck if the rent remained the same. The daughter rejected this offer because it would have brought Schnuck's unit into the rent control system at what Schnuck regarded as too low a level. The daughter also informed the tenant that Schnuck would not pay relocation expenses if the tenant agreed to vacate and move elsewhere. The tenant consequently refused to move. The daughter called the Santa Monica Rent Control Board to determine whether Schnuck could evict the tenant. An unnamed employee told her that she

could not, because Schnuck already lived on the property.

Schnuck then sued the City under 42 U.S.C. § 1983, claiming that the Rent Control Law transgressed the Constitution in various ways. The complaint set forth fifteen counts, but the district court dismissed ten counts in a ruling that Schnuck has not contested on appeal. The remaining five counts allege three constitutional violations: (1) a taking of Schnuck's property without just compensation; (2) violations of due process in that the Rent Control Law does not rationally serve its intended purposes; and (3) a violation of equal protection in discriminating against landlords as a group. We will deal with these claims in turn.

## ANALYSIS

### I. *Taking*

Schnuck claims that she has been subjected not only to a regulatory taking of her property but also to an actual physical occupation, both without just compensation. These claims present a threshold issue of ripeness.

#### *Ripeness*

■ In *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court established two prerequisites to the maintenance of a federal claim for taking. The first is that the state action alleged to constitute the taking must be a final action; the plaintiff's claim of taking is not ripe unless the plaintiff has sought a variance or comparable adjustment within the regulatory scheme. *Id.* at 186–87, 105 S.Ct. at 3116. This requirement presents no problem for Schnuck even though she sought no formal administrative relief. Section 1806(h)(2) of the Rent Control Law made her ineligible, as a landlord occupying a unit on her property, for the relief of removing the first-floor apartment from control and evicting her tenant. For purposes of her claim of regulatory taking, she has demonstrated that the City's application of its regulation to her property is final. As for her claim of physical taking, finality is assumed if she is able to demonstrate the physical occupancy. *See Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1478 (9th Cir.) (physical taking is by definition a final decision), *modified*, 882 F.2d 1398 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).

The second requirement of *Williamson County* is that a plaintiff must seek compensation through the procedures the state has provided before a claim of taking is ripe. *Williamson County*, 473 U.S. at 194, 105 S.Ct. at 3120. This requirement arises from the fact that the Fifth Amendment taking clause, made applicable to the states by the Fourteenth Amendment, is "designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 315, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987).

■ Schnuck did not seek compensation from the state or city for a taking. Prior to the Supreme Court's decision in *First English Evangelical Lutheran Church*, we had excused such failures in California because California provided no remedy in damages for a taking by a regulatory ordinance, but gave only injunctive or declaratory relief. *See Furey v. City of Sacramento*, 780 F.2d 1448, 1450 n. 1 (9th Cir. 1986) (forgiving failure to seek state remedy); *Agins v. Tiburon*, 24 Cal.3d 266, 274–77, 598 P.2d 25, 29–31, 157 Cal.Rptr. 372, 376–78 (1979) (denying inverse condemnation remedy under state law), *aff'd on other grounds*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980).

On June 7, 1987, however, the Supreme Court decided *First English Evangelical Lutheran Church*, which held California's denial of a damages remedy unconstitutional. From that time on, California could not deny a damages remedy for a taking by regulation. At oral argument of Schnuck's case, counsel agreed that the taking in this case, if it occurred, occurred when Schnuck attempted in August 1987 to gain possession of her first floor apartment from her

tenant, and was prevented from doing so by the Rent Control Law. It is clear, then, that a procedure for seeking compensation from the state was available to Schnuck.

Schnuck contends that she nevertheless was not required to seek compensation from the state. She argues that the state courts had already made it abundantly clear that they would reject any taking claim based on the Santa Monica Rent Control Law and that, accordingly, the damages remedy was illusory. Schnuck relies primarily on *Nash v. City of Santa Monica*, 37 Cal.3d 97, 688 P.2d 894, 207 Cal. Rptr. 285 (1984), *appeal dismissed for want of substantial federal question*, 470 U.S. 1046, 105 S.Ct. 1740, 84 L.Ed.2d 807 (1985), in which the Supreme Court of California stated that the Rent Control Law's prohibition on eviction, as applied to a landlord who wished to raze his rental building, did not constitute a taking under either the federal or state constitutions. *See also Baker v. City of Santa Monica*, 181 Cal. App.3d 972, 226 Cal.Rptr. 755 (1986) (restrictions on removal and demolition constitutional), *appeal dismissed for want of substantial federal question*, 479 U.S. 1073, 107 S.Ct. 1265, 94 L.Ed.2d 126 (1987); *Blue Chip Properties v. Permanent Rent Control Bd.*, 170 Cal.App.3d 648, 216 Cal. Rptr. 492 (1985) (Santa Monica's restriction on removal of housing from rental market constitutional).

Schnuck has not shown that bringing her claims in state court would be futile. Her reliance on *Nash* is misplaced: whereas the landlord in *Nash* proposed to remove an entire apartment building from rent con-

trol, Schnuck's proposal would result in no net loss of units from the rent-controlled market. Her allegation of mere generalized hostility of the state courts to takings claims does not excuse her failure to seek relief there. *See Sinaloa Lake Owners*, 864 F.2d at 1480. She must show that "state courts establish that landowners may not obtain just compensation through an inverse condemnation action under any circumstances." *Austin v. City and County of Honolulu*, 840 F.2d 678, 681 (9th Cir.1988). She has not done so. The district court was consequently correct in dismissing her takings claim as unripe.

## II. *Due Process*

■ Rent controls violate due process only if "arbitrary, discriminatory, or demonstrably irrelevant" to a legitimate governmental purpose. *Pennell v. City of San Jose*, 485 U.S. 1, 11, 108 S.Ct. 849, 857, 99 L.Ed.2d 1 (1988). Schnuck attacks the Rent Control Law as being purely arbitrary. Authority is against her.[1] In *Pennell*, the Supreme Court rejected a landlord's contention that a rent control ordinance was unconstitutional because it considered hardship to the tenant as one of the factors to be weighed in determining a reasonable rent; the Court stated that the balancing provision "represent[ed] a rational attempt to accommodate the conflicting interests of protecting tenants from burdensome rent increases while at the same time ensuring that landlords are guaranteed a fair return on their investment." *Pennell*, 485 U.S. at 13, 108 S.Ct. at 858. The same may be said of the Rent Control Law here.

---

1. The Supreme Court has upheld numerous constitutional challenges to rent control laws. *See Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (rejecting facial due process and equal protection challenges to an ordinance permitting the rent control board to consider tenant hardship in setting rents); *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596 (1948) (rejecting an equal protection challenge to a rent control law that did not control all rents, and upholding the law as an exercise of war powers); *Bowles v. Willingham*, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (rejecting a takings challenge to rent control provisions under the Emergency Price Control Act of 1942 that required "generally fair and equitable" rents but did not assure fair rental to

each landlord); *Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595 (1922) (rejecting Contracts Clause and Due Process challenges to a New York law that suspended a landlord's right to recover possession of rental property and granted tenants an unreasonable rent defense in an action for rent); *Marcus Brown Holding Co. v. Feldman*, 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877 (1921) (rejecting various challenges to the same New York law); *compare Chastleton Corp. v. Sinclair*, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924) (holding that an appeal from the District of Columbia rent commission was not an adequate remedy at law because it precluded a constitutional attack on the post-war extension of rent control on the basis that no further emergency existed).

Schnuck questions whether Santa Monica had a legitimate government purpose for enacting the Rent Control Law because she claims that two purported problems prompting the Rent Control Law, rapidly rising rents and a housing shortage, never existed. That question is generally left to the legislature, or in this case, the voters. Schnuck's own expert admits that prior to the enactment of the Rent Control Law in Santa Monica, "double-digit annual rent increases that [were] related more to avarice than operating costs and reasonable profit abound[ed]." [2] Santa Monica had a legitimate interest in protecting tenants from such unreasonable rent increases. *See Nash,* 37 Cal.3d at 100, 688 P.2d at 896–97, 207 Cal.Rptr. at 287–88 (1984) (upholding eviction limits and pre-demolition permits under the Santa Monica Rent Control Law as having a "real and substantial" relationship to the public welfare). [3] The eviction limits protect tenants from the high cost of dislocation in a tight housing market, and prevent landlords from arbitrarily evicting tenants simply to obtain higher rents from new tenants. [4] *See Pennell,* 485 U.S. at 14 n. 8, 108 S.Ct. at 859 n. 8.

Schnuck contends that the Rent Control Law does not "substantially advance" its purpose, which she misperceives as only to help the poor, elderly, minorities, and families with children. [5] The Rent Control Law's stated purpose is to help *all* Santa Monica tenants, not just those within the mentioned groups, and not those who wish to become tenants there. *See* Santa Monica Charter, § 1800, Statement of Purpose. [6] Controlling rents to a reasonable level and limiting evictions substantially alleviate hardships to Santa Monica tenants. That rent control may unduly disadvantage others, or that it may exert adverse long-term effects on the housing market, are matters for political argument and resolution; they do not affect the constitutionality of the Rent Control Law. Her due process claim fails.

## III.  *Equal Protection*

Schnuck's equal protection claims, that the Rent Control Law discriminates

---

2.  Dr. Richard Devine concludes that Santa Monica's rents rose moderately during the 1970's and he doubts that a severe housing shortage ever existed there. His report also notes that prior to enactment of the Rent Control Law, Santa Monica had an "extremely tight" housing market, many Santa Monica renters (over 40%) paid more than the 30% of their income for housing that the federal government considers burdensome, and median rent increased 1.6 percent more than median family income.

3.  In *Nash,* the Supreme Court of California noted the following as fact. "In the late 1970's, the city [Santa Monica] was confronted with a severe shortage of its traditionally scarce housing stock, precipitated in large measure by what came to be known as the 'Demolition Derby.' This term was coined to describe a 15–month period during which Santa Monica landlords razed over 1,300 rental units and converted hundreds of other such units into condominiums. Rental housing units were removed from the market at 10 times the rate of removals (relative to population) of neighboring Los Angeles." *Nash,* 37 Cal.3d at 100, 688 P.2d at 896–97, 207 Cal.Rptr. at 287–88.

4.  Schnuck's contention that rent control can only be constitutional when justified by war or emergency is without merit. *See Pennell,* 485 U.S. at 12, 108 S.Ct. at 857 (upholding a rent control provision that had the "asserted purpose of 'prevent[ing] excessive and unreasonable rent increases' caused by the 'growing shortage of and increasing demand for housing ...'").

5.  Schnuck presented evidence that 1) many economists believe that imposition of rent ceilings for other than short emergency periods tends to reduce housing quantity and quality, 2) small percentages of elderly, poor, minorities, and families with children have become new tenants in Santa Monica in the last two years, 3) some persons pay high brokers fees and advertise rewards to obtain rent control apartments in Santa Monica, and 4) new residential housing construction has declined in Santa Monica. Her evidence calls into question the wisdom of the Rent Control Law, but not its constitutionality.

6.  The following is part of the Statement of Purpose. "A growing shortage of housing units resulting in a low vacancy rate and rapidly rising rents ... constitute a serious housing problem ... [for] *Santa Monica residents.* ... These conditions endanger the public health and welfare of *Santa Monica tenants,* especially the poor, minorities, students, young families, and senior citizens. The purpose of this Article, therefore, is to alleviate the hardship caused by this serious housing shortage...." (emphasis added).

against landlords and is not rationally related to providing aid to its beneficiaries, are without merit. "[W]e will not overturn [a statute that does not burden a suspect class or a fundamental interest] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Pennell,* 485 U.S. at 14, 108 S.Ct. at 859 (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979)). Because the Rent Control Law rationally serves the legitimate purpose of protecting tenants and because landlords are not a suspect class, the Rent Control Law does not violate equal protection.

## CONCLUSION

The district court did not err in granting summary judgment to the City of Santa Monica in the face of Schnuck's challenge to the Rent Control Law. The judgment is

AFFIRMED.