**LEVALD, INC., Plaintiff–Appellant,**

v.

**CITY OF PALM DESERT, Defendant–Appellee.**

No. 91–56315.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Decided July 8, 1993.

Jerrold A. Fadem and Andrew H. Kopkin, Fadem & Douglas, Los Angeles, CA, for plaintiff-appellant.

Michael J. Andelson and Kandy Lee Allen, Best, Best & Krieger, Rancho Mirage, CA, for defendant-appellee.

Before: HUG, and O'SCANNLAIN, Circuit Judges, and SEDWICK,* District Judge.

O'SCANNLAIN, Circuit Judge:

We are called upon to consider, yet again, a takings challenge to mobile home rent control laws.

## I

Levald, Inc. owns a mobile home park in the city of Palm Desert, California. Residents of the park own their mobile homes but rent pads from Levald. Levald provides private streets and common areas, along with other lesser amenities. The vast majority of mobile homes are never moved once they are placed in the park.

The park is subject to California's Mobile-home Residency Law, California Civil Code § 798 et seq. ("the residency law"). The impetus for the residency law was the legislature's finding that "because of the high cost of moving mobilehomes, the potential for damage resulting therefrom, the requirements relating to the installation of mobilehomes, and the cost of landscaping or lot preparation, it is necessary that the owners of mobilehomes occupied within mobilehome parks be provided with the unique protection from actual or constructive eviction afforded by provisions of this chapter." Cal.Civ.Code § 798.55(a). The residency law severely limits the ability of the mobile home park owner to terminate the tenancy of the mobile home owner, and provides that the park owner may not require the removal of a mobile home when it is sold. Moreover, the residency law prohibits the park owner from charging a transfer fee for the sale, and the park owner may not disapprove a purchaser as

---

* The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

long as the purchaser has the ability to pay rent.

In 1985, Palm Desert passed a vacancy control ordinance to supplement an already-existing rent control ordinance. The vacancy control ordinance prohibited mobile home park owners from increasing the rent for a mobile home space when that space became vacant or the ownership of a mobile home was transferred. In 1986, Palm Desert repealed the rent control and vacancy control ordinances and reenacted their provisions in Palm Desert Ordinance No. 456. Under the ordinance, a park owner may apply for a hardship rental increase through various procedures outlined in the city's Rent Review Board Guidelines.

According to Levald, the combined effect of the residency laws and the ordinance ("the statutory scheme") is that a property interest is transferred from the landlord to its tenants: the right perpetually to occupy park spaces at below-market rents. Levald asserts the right has a market value that park tenants are able to capture when they sell their mobile homes to third parties. The premium that the new buyer must pay is equal to the difference between the rent controlled price and the fair market price over the expected life of the statutory scheme, discounted to present value. Thus, the argument goes, incoming tenants do not get the benefit of the lower rents since the lower rents are offset by the premium.

In 1989, Levald filed suit against Palm Desert. The complaint alleges violations of the Takings and Due Process Clauses of the United States Constitution, along with the California Constitution. On September 9, 1991, the district court dismissed the complaint, concluding that the takings claims were barred by the statute of limitations and that Levald had failed to state a claim for a violation of the substantive due process clause. The district court declined to exercise supplemental jurisdiction over the pendent state law claims. Levald appeals.[1]

## II

The Takings Clause of the Fifth Amendment provides: "[N]or shall property be taken for public use, without just compensation." Takings claims are divided into two classes: permanent physical occupation claims and regulatory takings. *Compare, e.g., Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 426, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868 (1982) (physical occupation) *with Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 123–25, 98 S.Ct. 2646, 2658–59, 57 L.Ed.2d 631 (1978) (regulatory taking). A physical occupation occurs when the government physically intrudes upon private property either directly or by authorizing others to do so. *Loretto,* 458 U.S. at 426, 102 S.Ct. at 3171. A regulatory taking occurs when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property. "Where the government authorizes a physical occupation of property (or actually takes title), the Takings Clause generally requires compensation." *Yee v. City of Escondido,* —— U.S. ——, ——, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992); *see Loretto,* 458 U.S. at 426, 102 S.Ct. at 3171 (installation of television cables, although only occupying one and one half cubic feet, represented a physical occupation and thus a per se taking). "But where the government merely regulates the use of property, compensation is required only if considerations such as the purpose of the regulation or the extent to which it deprives the owner of the economic use of the property suggest that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee,* —— U.S. at ——, 112 S.Ct. at 1526; *see Penn Central,* 438 U.S. at 123–25, 98 S.Ct. at 2658–59 (regulation that prohibit-

---

1. Palm Desert's motion to strike from Levald's brief factual allegations not in the record below is granted. The amended complaint that was lodged with, but not accepted for filing by, the district court is not part of the record on appeal and we thus do not consider factual allegations that were presented to the district court only in it. *See United States v. Sanchez–Lopez,* 879 F.2d 541, 548 (9th Cir.1989); *Kirshner v. Uniden Corp. of Am.,* 842 F.2d 1074, 1077 (9th Cir.1988). Moreover, the allegations do not concern facts that are judicially noticeable under Fed.R.Evid. 201(b).

ed Penn Central from building a fifty-five story office tower over its Grand Central Terminal drastically diminished the value of Penn Central's property, but did not amount to a taking). Because determining whether a regulatory action effects a taking requires "complex factual assessments of the purposes and economic effects of government actions," *Yee,* ── U.S. at ──, 112 S.Ct. at 1526, while any physical occupation by the government is a taking per se, much turns on the classification of the government's action.

### A

■ In *Hall v. City of Santa Barbara,* 833 F.2d 1270 (9th Cir.1987), *cert. denied,* 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988), *overruled by Yee v. City of Escondido,* ── U.S. ──, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), the Ninth Circuit considered whether a statutory scheme almost identical to the one challenged here could amount to a permanent physical occupation and thus a per se taking. The *Hall* court concluded that the appellants' claim that the mobile home rent control ordinance transferred from the landlords to the tenants a possessory interest in the land, consisting of the right to occupy the property in perpetuity while paying only a fraction of what it is worth in rent, was indeed a physical occupation claim. *Id.* at 1276–77.

Levald relied on *Hall* before the district court, arguing that the government had taken its property through a permanent physical occupation. After the district court reached its decision, however, the Supreme Court overruled *Hall* in *Yee v. City of Escondido,* ── U.S. ──, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). The Court held that the rent control ordinance, even when considered in conjunction with the California Mobilehome Residency Law, in no way authorized a compelled physical invasion of the property because the landlords "voluntarily rented their land to mobile home owners." *Id.* ── U.S. at ──, 112 S.Ct. at 1528. The Court noted that "neither the City nor the State *compels* petitioners, once they have rented their property to tenants, to continue doing so. To the contrary, the Mobilehome Residency Law provides that a park owner who wishes to

change the use of his land may evict his tenants, albeit with six or twelve months notice." *Id.* (emphasis added). The Court reserved, however, the question whether the combined effects of the mobilehome residency law and the rent control ordinance could amount to a *regulatory* taking. *Id.* ── U.S. at ── ── ──, 112 S.Ct. at 1530–31.

■ Because the Supreme Court extinguished any chance that Levald could prevail on a physical occupation theory, Levald seeks to argue for the first time on appeal that the statutory scheme effects a regulatory taking. Palm Desert argues that since Levald did not raise this argument to the district court, it is barred from raising it on appeal.

We are persuaded that Levald may make its regulatory takings argument on appeal. The Supreme Court's opinion in *Yee* is instructive. Although the *Yee* Court did not consider the merits of the regulatory takings claim because it was outside the scope of the grant of certiorari, the Court "reject[ed] the respondent's contention that the regulatory taking argument is not properly before [the Court] because it was not made below." *Id.* ── U.S. at ──, 112 S.Ct. at 1532. The Court noted: "Petitioners unquestionably raised a taking claim in the state courts. The question whether the rent control ordinance took their property without compensation ... is thus properly before us." *Id.* The Court continued:

> Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below. Petitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate *claims.* They are rather separate *arguments* in support of a single claim—that the ordinance effects an unconstitutional taking. Having raised a taking claim [below], therefore, petitioners could have formulated any argument they liked in support of that claim here.

*Id.* (emphasis in original) (citations omitted). Following that reasoning, we conclude that Levald's regulatory taking claim is not fore-

closed by *Yee's* rejection of the physical occupation theory.

## B

■ In addition to the division into physical occupation and regulatory takings, takings claims are divided into "facial" and "as-applied" challenges. A facial challenge involves "a claim that the mere enactment of a statute constitutes a taking," while an as-applied challenge involves "a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation." *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494, 107 S.Ct. 1232, 1246, 94 L.Ed.2d 472 (1987). As the *Keystone* Court noted, there is "an important distinction" between the two types of claims. Among other things, each raises different ripeness and statute of limitations issues. Here, we consider Levald's facial and as-applied claims in turn.

### 1

#### a

■ We must first consider whether Levald's facial challenge is ripe. *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), placed "two hurdles in the way of a takings claim brought in federal court against states and their political subdivisions." *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1402 (9th Cir.1989). The first hurdle—that the claimant must seek a final decision regarding the application of the regulation to the property at issue before the government entity charged with its implementation—does not apply to facial challenges, and is therefore not applicable here. *Yee,* —— U.S. at ——, 112 S.Ct. at 1532.

■ "The second, and independent, hurdle established by *Williamson County* requires plaintiffs to 'seek compensation through the procedures the State has provided for doing so' before turning to the federal courts." *Sinaloa,* 882 F.2d at 1402 (quoting *Williamson,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21). *Williamson,* however, does not require the plaintiff to bring a state court

action where it would be futile under existing state law. *Williamson,* 473 U.S. at 196–97, 105 S.Ct. at 3121–22; *Sinaloa,* 882 F.2d at 1402. "[T]he appropriate point for determining the adequacy of state compensation procedures is at the time the alleged taking occur[red]." *Sinaloa,* 882 F.2d at 1402. Here, the taking at issue in the facial challenge allegedly occurred at the time the ordinance was enacted—in 1986. California did not recognize actions for inverse condemnation based on *regulatory* takings until *after* the Supreme Court's decision in *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). Therefore, even though Levald did not seek remedies in state court, it was not required to do so because it would have been futile to seek state court relief at the time the alleged taking occurred. The claim is ripe.

#### b

We next consider whether, as the district court concluded, Levald's facial claim is barred by the statute of limitations. Levald argues (1) the district court erred in raising the statute of limitations issue sua sponte, (2) the law of the case is that the facial challenge is timely, and (3) in any event, the statute of limitations does not bar the facial claim.

Levald filed its complaint on August 23, 1989. Palm Desert moved to dismiss the complaint as, among other things, untimely under the statute of limitations. Judge Letts denied the motion. Palm Desert then filed its answer, pleading the statute of limitations as an affirmative defense. The case was transferred, ultimately ending up before Judge Waters. Palm Desert then brought a motion to dismiss the takings claim on ripeness grounds and to dismiss the due process claim for failure to state a claim. Although Palm Desert did not raise the statute of limitations defense in that motion, the district court rested its dismissal of the takings claim on that ground.

■ The district court properly entertained the statute of limitations issue. Although we have never considered this precise question in the statute of limitations context, we have held that a sua sponte dismissal was

not erroneous in an analogous context. In *Costlow v. Weeks,* 790 F.2d 1486, 1488 (9th Cir.1986), after the plaintiff filed its complaint, the district court dismissed the complaint sua sponte for lack of venue. Although the defendant in that case had never raised the venue issue, the court concluded that he had not waived lack of venue as an affirmative defense because he had not yet filed a responsive pleading. *Id.* The court continued: "In the absence of a waiver, we can find no reason to hold that the district court erred in raising the issue of defective venue on its own motion." *Id.*

Other circuits have addressed the precise question at issue here and have concluded that the district court may sua sponte dismiss a complaint as untimely so long as the defendant has not waived the defense. *See, e.g., Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980) (affirming the district court's sua sponte dismissal on statute of limitation grounds, noting that the defendant had pleaded the statute of limitations as a defense in his answer), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *see also Street v. Vose,* 936 F.2d 38, 41 (1st Cir.1991) (upholding sua sponte dismissal of complaint on statute of limitations grounds); *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989) ("While this Court generally will not consider an affirmative defense not raised below, we are not prevented from considering the defense where it is raised *sua sponte* by the district court."). *Cf. Wagner v. Fawcett Publications,* 307 F.2d 409, 412 (7th Cir.1962) (where the defendant *waived* the statute of limitations defense, the district court could not raise it sua sponte).

Here, Palm Desert pleaded the statute of limitations in its answer, and thus preserved the defense. Moreover, Levald had the opportunity to present argument on the statute of limitations question before the district court and on appeal. Thus, we are not troubled by the fact that Palm Desert had not raised the defense in the particular motion before the district court.

■ Levald's argument regarding the law of the case is also without merit. Regardless whether it was appropriate or prudent for Judge Waters to revisit the statute

of limitations question when Judge Letts had already ruled on it, there is nothing that insulates either judge's conclusion from appellate review. We therefore consider the merits of the statute of limitations argument.

■ To determine when the statute of limitations period begins to run, we first must determine when the cause of action accrued. Determining when the cause of action accrues is merely the corollary to the ripeness inquiry. A plaintiff asserting a facial challenge contends that the passage of the ordinance effects a taking. However, "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking *without just compensation.*" *Williamson,* 473 U.S. at 194, 105 S.Ct. at 3120 (emphasis added). "So long as the state provides 'an adequate process for obtaining compensation,' no constitutional violation can occur" until just compensation is denied. *Sinaloa,* 882 F.2d at 1402 (quoting *Williamson,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21). Thus, a plaintiff cannot bring a section 1983 action in federal court until the state denies just compensation. A claim under section 1983 is not ripe—and a cause of action under section 1983 does not accrue—until that point.

■ As our ripeness cases teach, there is an exception to this general rule. We do not require a claimant to seek relief in state court as a prerequisite to filing a section 1983 claim in federal court when it would be futile to do so. *See, e.g., Austin v. City and County of Honolulu,* 840 F.2d 678, 680–81 (9th Cir.1988). Where the state has expressly rejected the plaintiff's theory of the case and therefore the state remedies are inadequate, we consider the unavailability of a state remedy to be the functional equivalent of the denial of just compensation. In this small class of cases, the cause of action accrues and the limitations period begins to run upon the enactment of the statute.

■ This is consistent with our decision in *De Anza Properties X, Ltd. v. County of Santa Cruz,* 936 F.2d 1084 (9th Cir.1991). In that case, we held that the facial takings claim accrued upon the passage of the ordinance. *Id.* at 1087. Although *De Anza* did not discuss the ripeness question, it is clear

that it would have been futile for the claimant to seek compensation in California courts at the time the alleged taking occurred. The ordinance was passed in 1982, before California law recognized inverse condemnation claims based on regulatory takings. *De Anza* thus stands for the proposition that in cases in which it would be futile to seek compensation in state court, a facial challenge to a statute as a taking without just compensation under section 1983 accrues upon the passage of the ordinance. *See also Azul–Pacifico v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992) (on rehearing) (cause of action accrued when the ordinance was passed in 1982, before California law recognized regulatory takings). To read *De Anza* more expansively—interpreting it to hold that *all* facial challenges accrue upon the passage of the legislative enactment— would be in conflict with the Supreme Court's decision in *Williamson*.

 Here, as Levald itself recognizes, it would have been futile to seek compensation in state court where the ordinance was passed because California law provided no remedy for regulatory takings at that time. *Supra* Part II.B.1.a; *see Schnuck v. City of Santa Monica*, 935 F.2d 171, 173 (9th Cir. 1991). Since the unavailability of state remedies is the functional equivalent of the denial of just compensation, Levald's cause of action under section 1983 accrued upon the passage of the ordinance. The statute of limitations for all section 1983 claims in California accruing after 1985 is one year. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *De Anza*, 936 F.2d at 1085. In this case, the final version of the ordinance was passed in 1986; the complaint was not filed until 1989. By the time Levald filed the complaint, the limitations period had run.

Levald argues that because in other contexts the Supreme Court has allowed challenges to statutes long after they were enacted, Levald should be allowed to bring an action challenging the enactment of a statute as a taking without just compensation at any point. This argument misapprehends the differences between a statute that effects a taking and a statute that inflicts some other kind of harm. In other contexts, the harm inflicted by the statute is continuing, or does not occur until the statute is enforced—in other words, until it is applied. In the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed. Thus, it is not inconsistent to say that different rules adhere in the facial takings context and other contexts.

Levald further argues that the cause of action in this case did not accrue until property values in Palm Desert increased dramatically years following enactment. This argument fails to acknowledge the distinction between a facial and an as-applied challenge: while the rising property values may be relevant to an as-applied challenge, they are not relevant to a claim that the very enactment of the statute effected a taking.

Levald finally contends that the statute of limitations is inapplicable to its claim for declaratory judgment. This argument is meritless. As the First Circuit held in a similar takings case:

> To prevent plaintiffs from making a mockery of the statute of limitations by the simple expedient of creative labelling— styling an action as one for declaratory relief rather than for damages—courts must necessarily focus upon the substance of an asserted claim as opposed to its form. It is settled, therefore, that where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy.

*Gilbert v. City of Cambridge*, 932 F.2d 51, 57–58 (1st Cir.1991) (citing *Cope v. Anderson*, 331 U.S. 461, 464, 67 S.Ct. 1340, 3141, 91 L.Ed. 1602 (1947), and *Russell v. Todd*, 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754 (1940)). Therefore, if " 'a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern.' " *Id.* at 58 (quoting *Orangetown v. Gorsuch*, 718 F.2d 29, 42 (2d Cir. 1983)). Whether styled as a claim for dam-

ages or one for declaratory judgment, the facial challenge is time barred.

2

■ In addition to its facial challenge, Levald asserts on appeal that it has stated an as-applied takings claim. The nature of the as-applied challenge, however, is not clear; neither the briefs nor the complaint spells out precisely how Levald believes the *application* of the statute has effected a taking. The gravamen of Levald's complaint is that the statutory scheme does not substantially advance its stated purpose because most tenants—those other than the incumbents—will pay a premium equal to the expected difference between the rent controlled price and the market price discounted to present value. Future tenants thus will *not* pay less than market value for housing. Thus, the argument goes, insofar as the purpose of the statute is to control spiraling housing costs for future tenants, the statutory scheme does not substantially advance its purpose. The statute operates solely as a transfer of wealth from the landlord to the existing tenant. That argument, however, is relevant only to a *facial*, not an as-applied, regulatory challenge. It is not a particular *application* of the statute that gives rise to the premium; the premium arises solely from the existence of the statute itself.[2] Given that the existence of the premium does not give rise to an as-applied challenge, it seems that an as-applied challenge would have to focus on the reasonableness of the return on Levald's investment—in other words whether the allowable rent increases are large enough—and not on the "transfer" of the premium. Such a claim is not clearly stated in Levald's original complaint, nor has Levald clearly stated

any other basis for an as-applied challenge in this case.[3]

■ Despite Levald's failure to articulate clearly the basis for its as-applied challenge, we will assume arguendo for purposes of this appeal that the complaint can be construed to state an as-applied claim. We must conclude, however, that Levald has not satisfied the second ripeness requirement. Levald has not sought compensation in state court, nor has it shown that "the state courts [have] establish[ed] that landowners may not obtain just compensation through an inverse condemnation action under any circumstances." *Austin*, 840 F.2d at 681. Indeed, California has recognized inverse condemnation claims based on as-applied regulatory takings since the Supreme Court decided *First Evangelical Lutheran Church*, 482 U.S. 304, 107 S.Ct. 2378 (holding that California's denial of compensation for inverse condemnation claims based on regulatory takings was unconstitutional). *Schnuck*, 935 F.2d at 173–74.[4]

Levald contends that notwithstanding the Supreme Court's decision in *First Evangelical*, it would be futile to seek relief in California courts because the "California courts defy the United States Supreme Court." We rejected this very argument in *Schnuck*, 935 F.2d at 174, in which we held that the appellant's "allegation of mere generalized hostility of the state courts to takings claims does not excuse [the claimant's] failure to seek relief there." Rather, in order to be excused from this requirement, the appellant must show that the state has explicitly rejected its theory of the case. *Id.* Levald has not done so.

At the time Levald filed suit, California courts refused to follow *Hall v. City of Santa*

2. The *size* of the premium will obviously fluctuate. However, Levald's claim does not focus on the size of the premium; rather, it is the existence of the transfer that forms the basis of Levald's claim.

3. We emphasize that we do not hold that it would be impossible for a litigant to make such an argument. We merely note that Levald has not spelled out the nature of an as-applied claim.

4. While California did not recognize a remedy for regulatory takings before 1987, any as-applied challenge that accrued before the availabili-

ty of the remedy in 1987 would be untimely under the one year statute of limitations for § 1983 actions. *Schnuck v. City of Santa Monica*, 935 F.2d 171, 173–74 (9th Cir.1991). As-applied regulatory takings must be brought under § 1983. *Azul–Pacifico*, 973 F.2d at 705. As discussed above, the statute of limitations for § 1983 claims in California is one year. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Any taking that resulted from the application of the ordinance prior to 1988—one year before the complaint was filed—would be barred as untimely.

*Barbara,* thus rendering it futile to seek compensation on a *physical occupation* theory in state court. However, at the time Levald filed suit, California courts did recognize regulatory takings—Levald's only viable theory. Levald is obliged to seek compensation in state court before it can seek relief under section 1983 on an as-applied takings theory.

In so holding, we in no way mean to suggest that the doors to the federal courthouse will remain permanently closed to Levald or to other litigants in Levald's position. Rather, if Levald cannot obtain relief through the state procedures available to it, Levald will have the right to a federal determination of whether the ordinance, as applied to it, "unjustly imposes a burden on [Levald] that should 'be compensated by the government, rather than remain[ing] disproportionately concentrated on a few persons.'" *Yee,* ——— U.S. at ———, 112 S.Ct. at 1530 (quoting *Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659).

## III

### A

Levald argues that the district court improperly dismissed its substantive due process claim.

 In reviewing economic legislation on substantive due process grounds, we give great deference to the judgment of the legislature. "[O]rdinances survive a substantive due process challenge if they were *designed to* accomplish an objective within the government's police power, and if a rational relationship existed between the provisions and purpose of the ordinances." *Boone v. Redevelopment Agency of City of San Jose,* 841 F.2d 886, 892 (9th Cir.1988) (quoting *Scott v. City of Sioux City,* 736 F.2d 1207, 1216 (8th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985)). Unlike in the takings context, there is no requirement that the statute *actually* advance its stated purpose; rather, the inquiry focuses on whether "the governmental body *could* have had no legitimate reason for its decision." *Shelton v. City of College Station,* 780 F.2d 475, 483 (5th Cir.1986) (en banc) (citing *Minnesota v. Clover Leaf Creamery Co.,* 449

U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981)). "[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

 Here, the stated purposes of the ordinance were to alleviate hardship created by rapidly escalating rents; to protect owners' investments in their mobile homes; to equalize the bargaining position of park owners and tenants; and to protect residents from unconscionable and coercive changes in rental rates. These purposes are similar to those advanced in support of other rent control ordinances; the Supreme Court has held that these goals are legitimate. *See Pennell v. City of San Jose,* 485 U.S. 1, 13–14, 108 S.Ct. 849, 858, 99 L.Ed.2d 1 (1988).

Moreover, a rational legislator could have believed that the rent control ordinance would further the stated goals, at least insofar as the purpose is to protect existing tenants. For example, a rational legislator could have believed that the unfettered right of a park owner to raise the rent on a space when ownership of a mobile home was transferred might make it difficult for a mobile home owner to sell. The legislator thus could have believed that the ordinance protects owners' investments in their units. It may be true that in operation the ordinance does nothing more than take "money from the landlord and put[ ] it into the pocket of a tenant who no longer resides at the park." *Sierra Lake Reserve v. City of Rocklin,* 938 F.2d 951, 958 (9th Cir.1991), *vacated,* ——— U.S. ———, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992), *reinstated in part,* 987 F.2d 662 (9th Cir. 1993). However, while one might believe that the ordinance is an ineffective—and indeed draconian—means by which to effect its goals, "[h]ow well the ordinance serves [its] purpose[s] is a legislative question, one the court will not consider" in the context of a substantive due process challenge. *Id.* Dismissal of the substantive due process claim was proper.

## B

Levald next argues that its motion for leave to amend was improperly denied.

After determining that the ordinance on its face met the rational relation test, the district court in its September 9, 1991, order stated the following:

> The substantive due process claim as written in the complaint constitutes only facial challenges to the Ordinance. As such, it is dismissed *without prejudice* because the plaintiff might be able to state a claim for violation of due process as applied, if, for example, it alleges that it had applied for an increase under the Ordinance and was not given an amount constituting a fair amount of its investment.

Final judgment was entered on all claims on September 12, 1991. Levald moved for clarification of this order, requesting a due date for filing an amended complaint. On October 8, 1991, the district court denied the motion without comment and refused to allow Levald to file an amended complaint.

### 1

■ As a preliminary matter, we must determine whether this court has jurisdiction to consider the denial of leave to amend.[5] After the district court denied the motion, Levald filed a notice of appeal indicating that it was appealing the September 9th order. Levald did not indicate in the notice of appeal that it also intended to appeal the denial of leave to amend.

Federal Rule of Appellate Procedure 3(c) provides that "[t]he notice of appeal shall ... designate the judgment, order or part thereof appealed from."

> While some circuits construe Rule 3(c) strictly, this circuit has held that "a mistake in designating the judgment appealed from should not bar appeal so long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake." In determining whether "intent" and "prejudice" are present, we apply a two-part test: first, whether the affected party had notice of the issue on appeal; and second, whether the affected party had an opportunity to fully brief the issue.

*Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1481 (9th Cir.1986) (citations omitted), *aff'd,* 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989). Here, the denial of leave to amend the complaint was addressed in Levald's opening brief. We have previously held in similar circumstances that this is enough to demonstrate that the appellee had notice of the issue and did not suffer prejudice from the appellant's failure to specify the order in the notice of appeal. *See, e.g., Meehan v. County of Los Angeles,* 856 F.2d 102, 105–06 (9th Cir.1988). We thus reach the merits of Levald's argument.

### 2

■ A district court's denial of plaintiff's request to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a) is reviewed for abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). "A court is within its discretion to refuse amendment and dismiss the complaint if it 'concludes that the pleading as amended could not withstand a motion to dismiss.'" *Hoover v. Langston Equip. Assocs., Inc.,* 958 F.2d 742, 745 (6th Cir.1992) (citations omitted). However, the "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of Federal Rules." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ Here, the district court gave no reason for denying Levald leave to amend the complaint. Nor is the reason for the denial apparent from the record. *See DCD Programs Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987) ("in the absence of written findings or a record which clearly indicates reasons for the district court's denial, this court will reverse a denial of leave to amend"). The district court dismissed the

---

**5.** Although Palm Desert does not raise this argument, we must raise issues concerning our jurisdiction *sua sponte.*

claim "without prejudice," implying that the defects in the complaint were not unremediable. *See id.* at 187. The court stated that an allegation "that [Levald] had applied for an increase under the ordinance and was not given an amount constituting a fair return on its investment" would perhaps be sufficient to state an as-applied due process claim. The proposed amended complaint alleged precisely that:

> [27] The Ordinance as applied to Levald deprives Levald of property without due process of law.

> [28] By the Rent Review Board's enforcement policy of the Ordinance: Levald is not able to receive a fair return on the value of Levald's property or on its capital improvements. The value of Levald's investment does not even keep pace with inflation.[6]

Even though the amended version of the complaint seemed to comply with the direction provided by the court, the court refused to grant leave to amend. Since the district court did not provide an explanation for its refusal to allow Levald to amend its complaint and since its reasons are not apparent from the record, we conclude that the district court abused its discretion in failing to explain its reasons for denying leave to amend the complaint. We thus remand for explanation.

## IV

Levald argues that the district court erred in declining to exercise supplemental jurisdiction over its state law claims.

28 U.S.C. § 1367(c) provides:

The district courts may decline to exercise supplemental jurisdiction over a claim ... if—

> . . . . .

> (3) the district court has dismissed all claims over which it has original jurisdiction. . . .

Here, the district court properly exercised its discretion under section 1367(c)(3) and de-

clined to retain the pendent state claims after it dismissed all of the other claims in the complaint.

## V

AFFIRMED in part, REVERSED and REMANDED in part. Palm Desert is awarded costs on appeal.

---

**6.** Although the amended complaint is not part of the record as defined by Fed.R.App.P. 10(a), we consider the contents of it for the limited purpose of determining whether the district court abused its discretion in failing to allow Levald to file the complaint. *See DCD Programs Ltd. v. Leighton,* 833 F.2d at 186 (9th Cir.1987).