**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-2115**

ROBERT D. ADAMS, JR.; AILEEN S. ADAMS,

Plaintiffs - Appellants,

versus

VILLAGE OF WESLEY CHAPEL, a North Carolina
Municipal Corporation; ALBERT W. BLACK,
Individually,

Defendants - Appellees.

------------------------------------------------

NORTH CAROLINA PROPERTY RIGHTS COALITION,
INCORPORATED; JOHN LOCKE FOUNDATION,

Amici Supporting Appellants.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte. Robert J. Conrad, Jr.,
Chief District Judge. (3:03-cv-00411)

Argued: October 31, 2007          Decided: December 11, 2007

Before TRAXLER and GREGORY, Circuit Judges, and Jerome B. FRIEDMAN,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** William J. Brian, Jr., KENNEDY, COVINGTON, LOBDELL & HICKMAN, L.L.P., Research Triangle Park, North Carolina, for Appellants. Steven Kepner McCallister, SHANAHAN LAW GROUP, Raleigh, North Carolina, for North Carolina Property Rights Coalition, Incorporated, and John Locke Foundation, Amici Supporting Appellants. Ann Cox Rowe, DAVIS & HAMRICK, L.L.P., Winston-Salem, North Carolina; Torin L. Fury, FRAZIER, FRANKLIN, HILL & FURY, R.L.L.P., Greensboro, North Carolina, for Appellees. **ON BRIEF:** Patrick L. Byker, KENNEDY, COVINGTON, LOBDELL & HICKMAN, L.L.P., Research Triangle Park, North Carolina, for Appellants. H. Lee Davis, Jr., DAVIS & HAMRICK, L.L.P., Winston-Salem, North Carolina; William L. Hill, FRAZIER, FRANKLIN, HILL & FURY, R.L.L.P., Greensboro, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert D. Adams and Aileen S. Adams appeal a district court order granting summary judgment against them on various claims arising out of the annexation of a tract of land that they owned and declining to exercise supplemental jurisdiction over their remaining claims. We affirm.

I.

Because this is an appeal from the grant of summary judgment, we view the facts in the light most favorable to the Adamses, the non-movants. See Saucier v. Katz, 533 U.S. 194, 201 (2001).

In July 1999, Albert Black, the mayor of the Village of Wesley Chapel, North Carolina ("the Village"), spoke to Mr. Adams regarding the possible voluntary annexation of a 184-acre tract of land that the Adamses owned. Both men testified that they could not remember the particulars of the conversation. Afterwards, however, Black sent Adams a letter stating in pertinent part:

> It was a pleasure to talk with you on Saturday about the Village of Wesley Chapel. I have enclosed some information about Wesley Chapel along with a "Petition for Voluntary Annexation."
>
> Because some of your neighboring property owners have expressed interest in being voluntarily annexed into Wesley Chapel within the next thirty or so days, I wanted to make sure you were made aware of this in case you would also like to become part of Wesley Chapel at this time.
>
> The Village of Wesley Chapel offers you protection from another municipality attempting to take you into its boundaries through involuntary annexation as well as

3

> offering a low tax rate ($.02 per $100.00 of property valuation).
>
> If you wish to be a part of this voluntary annexation, please complete the enclosed form and mail it to us as soon as possible. If you have questions, please do not hesitate to contact me . . . .

J.A. 3030. Adams also had a conversation with Black in which Black told him that his zoning would not change if the Adamses voluntarily annexed their property. The Adamses subsequently completed the form and sent it in, and in September 1999, their petition was approved.

At the time the tract was annexed, it was zoned "R-40" by Union County, where the tract was located, and the Village had not enacted a zoning ordinance. On July 7, 2000, however, the Village sent the Adamses a notice of a public hearing on a proposed new zoning ordinance. The letter stated "that the Village Council does not plan to change the current zoning designations of any property." J.A. 3085, 5769. Indeed, when the zoning ordinance was subsequently enacted on August 21, 2000, the Adamses' tract continued to be zoned R-40; however, the meaning of that designation changed under the new ordinance. Under Union County's zoning, R-40 was a density standard, while under the Village's, it was a minimum lot size. The new designation excluded flood plain and power line rights of way from a parcel's usable area and allowed no deviations from a minimum-40,000-square-foot lot. That excluded approximately 40 acres of usable area from the Adamses'

4

tract, resulting in 35 fewer house lots that could be developed, and reducing the property value by $1,590,000. The Adamses later petitioned unsuccessfully to rezone their property.

Dissatisfied with this result, the Adamses filed suits in state and federal court against the Village and Black in his individual capacity ("Appellees"). The state court action was subsequently removed to federal court and consolidated with the other federal action. The Adamses then sold the property in question for $3,700,000 on March 1, 2004, while this action was pending. The Adamses had paid $56,500 for the land in 1964.

As is relevant here, the Adamses' complaint alleges violations of federal and state constitutional provisions protecting against takings without just compensation and violations of equal protection and substantive due process rights. It also includes state law claims for fraud, negligent misrepresentation, and violation of North Carolina's unfair and deceptive trade practices statute, see N.C.G.S. § 75-1.1. The district court granted summary judgment against the Adamses on the constitutional claims, finding that their sale of the land rendered the claims moot and that the claims failed as a matter of law in any event. Declining to exercise supplemental jurisdiction over the remaining state law claims, the district court remanded them to state court. See 28 U.S.C.A. § 1367(c)(3) (West 2006).

II.

The Adamses first contend that the district court erred in concluding that their constitutional claims were moot. We agree.

In order to have standing, a plaintiff must allege and prove an actual or imminent injury caused by the defendant's challenged conduct that can be redressable by the relief sought. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998). Generally speaking, these elements must continue to exist throughout the lawsuit; otherwise, the action becomes moot. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980). But cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190-92 (2000) (explaining that standing need not always be present through time to prevent a case from becoming moot).

The Adamses' constitutional claims allege that Appellees' actions proximately caused a reduction in the value of their property, entitling them to damages. That they have since sold the property is irrelevant to the redressability of their claim since a damages award could redress the injury they allege. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 8 (1978) ("Respondents' claim for actual and punitive damages . . . saves this cause from the bar of mootness."). Thus, the Adamses' sale of their property did not moot their constitutional claims.

III.

The Adamses next argue that the district court erred in ruling that they failed to create a genuine issue of material fact regarding their regulatory takings claims. We disagree.

The Takings Clause of the Fifth Amendment to the United States Constitution provides, "[N]or shall private property be taken for public use, without just compensation."[1] This constitutional protection "is not restricted to physical invasions, occupations, or removals of property." Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 190 (1st Cir. 1999). Rather, in some cases, overly burdensome government regulation can constitute an unconstitutional taking. See id. "A regulatory taking occurs when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property." Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 684 (9th Cir. 1993). It may occur as a result of "a radical curtailment of a landowner's freedom to make use of or ability to derive income from his land," even if the government does not physically intrude upon, or acquire a legal interest in, the property. Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 14 (1984). However, a regulatory action only becomes a compensable

_____

[1]The Adamses advance the same arguments with regard to their state constitutional claims as they do for their federal ones. We therefore do not distinguish between the two for the purposes of our discussion.

7

taking under the Fifth Amendment if the government interference has gone "too far," Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922), which it does when "some people alone" are forced "to bear public burdens which, in all fairness and justice, should be borne by the public as a whole," Armstrong v. United States, 364 U.S. 40, 49 (1960).

The Adamses agree that the district court was correct to apply the three-factor regulatory takings test provided in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 124 (1978), to their claim. Under that test, when a regulation such as a zoning ordinance causes substantial economic harm but does not deprive the landowner's property of all economic value, whether a taking occurred depends on "the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." Palazzollo v. Rhode Island, 533 U.S. 606, 617 (2001). Importantly, diminution in the property value alone cannot establish a taking. See Penn Central, 438 U.S. at 131.

Here, the only injury that the Adamses can show is a diminution in the value of their property. They certainly were not denied the ability to obtain a reasonable return on their investment. They purchased the property for $56,500 and sold it for $3.7 million. The property was worth that much because it could still be developed, just not quite to the extent that it

8

could have been before the Village adopted its zoning ordinance. With regard to the test's final factor, the character of the government action, the regulation at issue is garden-variety zoning based on the need to control growth, preserve a small-town atmosphere, and maintain a low tax rate.[2] The Supreme Court has previously recognized the legitimacy of similar regulations. See, e.g., City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 732-33 (1995).

The Adamses confuse matters by trying to include Black's actions in inducing them--fraudulently, they contend--to voluntarily annex their property as part of the challenged government action. But the annexation did not impose any burden on the Adamses' property rights. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 539 (2005) (noting that the regulatory takings test "focuses directly upon the severity of the burden that government imposes upon private property rights"). "Government action" in this context refers to the action that imposed the burden--the Village's adoption of its zoning ordinance. Appellees' actions in

---

[2]The Adamses contend that they received no "reciprocity of advantage" by the annexation and the Village's adoption of the zoning ordinance. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 341 (2002) (internal quotation marks omitted). But the Adamses, in fact, received the very benefits that the zoning ordinance was adopted to provide. See Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 491 (1987) ("While each of us is burdened somewhat by such restrictions, we, in turn, benefit greatly from the restrictions placed on others.").

inducing the Adamses to annex their property thus are not relevant to the regulatory takings claim. The district court therefore correctly granted summary judgment against the Adamses on these claims.

IV.

The Adamses also maintain that the district court erred in granting summary judgment against them on their substantive due process claims. We disagree.

In order to recover for a violation of substantive due process, plaintiffs must prove that they had a property interest, that the defendants deprived them of that interest, and that the deprivation "falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 440 (4th Cir. 2002) (internal quotation marks omitted). To prove this third element, plaintiffs must show that the challenged actions had "no foundation in reason and [were] a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 827 (4th Cir. 1995) (internal quotation marks omitted).

Here, the Adamses maintain that Black misled them by falsely stating that their land was in danger of being involuntarily annexed by another town with a higher tax rate if they did not

10

voluntarily annex their property to the Village. The Adamses maintain that Black knew from his involvement in two lawsuits to prevent previous attempts by the town of Indian Trail to annex property in the Wesley Chapel area that North Carolina law prohibits involuntary annexation of large tracts of undeveloped land such as theirs.

The Adamses, however, have failed to forecast any evidence that Black told them that such an involuntary annex attempt could succeed. Black's letter states only that voluntary annexation to Wesley Chapel could protect the Adamses "from another municipality attempting" involuntary annexation of their property. J.A. 3030 (emphasis added). Indeed, as the Adamses themselves point out, the town of Indian Trail had attempted such involuntary annexations previously.

The Adamses also argue that their substantive due process rights were violated in light of Black's prior representation that the property's zoning would not change if they voluntarily annexed it. Although the R-40 designation did not change under the Village zoning ordinance, the Adamses argue that the changes in the meaning of that designation under the ordinance significantly lessened the value of their property. We conclude that the Adamses' evidence, even taken as true, cannot give rise to an inference of conduct "fall[ing] so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency."

11

<u>Tri-County Paving</u>, 281 F.3d at 440. It is undisputed that when the property was annexed, its zoning did not change. In fact, the zoning changed only in August 2000, nearly a year after the annexation. Concerns regarding the density requirements that were eventually adopted were discussed at the August 3, 2000, public hearing concerning the ordinance. That those concerns did not carry the day cannot constitute the basis for a claim of government conduct so egregious as to amount to a violation of the Adamses' substantive due process rights. Moreover, it is worth noting that the Village honored all plats and subdivision plans that were filed with Union County before enactment of the Village zoning ordinance. There is no reason to doubt that the Adamses would have received the same treatment had they filed a plat prior to the ordinance's enactment. The district court therefore correctly granted summary judgment on this claim.

V.

The Adamses further argue that the district court erred in granting summary judgment against them on their Equal Protection claims. We disagree.

The Equal Protection Clause of the Fourteenth Amendment "limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations." <u>Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal</u>, 135 F.3d 275, 289

12

(4th Cir. 1998) (internal quotation marks & emphasis omitted).  To establish an Equal Protection claim with a "class of one," a plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Because the Adamses do not allege the infringement of a fundamental right or claim a suspect classification, Appellees need only show that the challenged action "is rationally related to a legitimate state interest."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985).

The Adamses maintain that Black intentionally treated them differently than he treated similarly situated landowners when he solicited the voluntary annexation of their property.  The record does not bear that out, however.  In fact, Black testified in his deposition that he had "talked to a lot of people" about voluntary annexation.  J.A. 2671; see J.A. 2676-77.[3]

The Adamses also maintain that Appellees violated their Equal Protection rights by denying their request to rezone their property from R-40 to R-20.  The Adamses emphasize that theirs was the only

---

[3]The Adamses claim that they were treated differently from similarly situated landowners because the Village failed to conduct the statutorily requisite verification of their annexation petition or publish the statutorily required notice advertising the public annexation hearing.  The Adamses do not contend, however, that they were harmed by this treatment.

zoning request the Village ever denied, and they note that 79% of the zoning permits issued by the Village for new house construction on property zoned for lots with a minimum size of 40,000 square feet were, in fact, issued for lots with less than 40,000 square feet in spite of their R-40 zoning.  However, the Adamses ignore the uncontradicted evidence that these lots had been platted under Union County zoning, that the plats for those subdivisions had been approved, adopted, and accepted under Union County zoning, and that the Village had no lawful right to deny those building permits because the Union County zoning was the lawful zoning ordinance in place at the time the developments were platted.  Thus, the Adamses failed to create a genuine issue of fact regarding whether these other lots were similarly situated to theirs.[4]

## VI.

In sum, we conclude that although the Adamses' constitutional claims are not moot, the district court properly determined that the Appellees were entitled to summary judgment on each of them.

<u>AFFIRMED</u>

---

[4]We note that while the Adamses contend that the district court erred in remanding their claims for fraud, negligent misrepresentation, and unfair trade practices, they do so only on the basis that the court erred in granting summary judgment on their other claims.