**HACIENDA VALLEY MOBILE ES-TATES, a California Limited Partnership, Plaintiff–Appellant,**

v.

**CITY OF MORGAN HILL; City of Morgan Hill Rent Review Opinion Commission, Defendants–Appellees.**

No. 02–15986.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 2003.

Filed Dec. 17, 2003.

Robert S. Coldren and Mark D. Alpert, Hart, King & Coldren, Santa Ana, California, for the appellant.

Donald R. Lincoln, Endeman, Lincoln, Turek & Heater LLP, San Diego, California, for the appellees.

Before: HUG, JR., B. FLETCHER, and TASHIMA, Circuit Judges.

## OPINION

HUG, JR., Circuit Judge:

Hacienda Valley Mobile Estates ("Hacienda") brought this action to challenge the constitutionality of the City of Morgan Hill's ("City's") vacancy control ordinance, Ordinance No. 1090 ("Ordinance"). The Ordinance prevents mobile home parks from raising the rent on a mobile home "pad" when the mobile home is sold. Hacienda alleges that the Ordinance allows existing tenants to capture a "premium" on the sales price of their mobile homes because the new tenants are guaranteed low rent. Hacienda argues that this premium is an unconstitutional taking.

District Judge Whyte found that Hacienda had not met the ripeness requirements imposed on regulatory taking cases by *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and therefore dismissed the case for lack of subject matter jurisdiction. We have jurisdiction to hear appeals from final district court decisions pursuant to 28 U.S.C. § 1291, and we now affirm.

### I. Background

Hacienda operates a 165–unit mobile home park ("Park") in Morgan Hill. Mobile home owners generally rent a space, or "pad," in a mobile home park, while the park provides common areas and utilities. Because it is expensive to move mobile homes, they are rarely relocated once they are installed in a park. Instead, the home is sold to new owners who continue to rent the pad from the mobile home park.

Since 1983, Morgan Hill has imposed a rent control scheme on mobile home parkowners, limiting the amount by which parkowners can raise the rents in their parks. The present challenge addresses one of the newer elements of the rent control system. In 1992, the City amended its mobile home rent control ordinance to include a vacancy control provision, the Ordinance at issue in this case. The Ordinance prohibits a mobile home park from raising the rent on a mobile home pad when a mobile home is sold, while still allowing the park to collect a $25 administrative fee when the mobile home changes hands.

Morgan Hill's rent control scheme is administered by the City's Rent Control Commission ("Commission"). In April 2000, Hacienda petitioned the Commission for a rent increase of $200.00 per month. The Commission made its final determination in November 2000, granting Hacienda an increase of $4.03 per month. Less than one year later, on October 17, 2001, Hacienda filed this action against the City alleging that the Ordinance had combined with complex economic factors and the Commission's refusal to grant a rent increase to create a "premium" on the spaces in its Park. Hacienda argues that the below-market rate rent it is required to charge makes its Park attractive to potential mobile home buyers. Sellers of mobile homes in the Park are therefore able to command a "premium" over and above the worth of the home for the right to continue to live in the Park at below-market rates. In effect, Hacienda is arguing, the Ordinance has created an income-transfer, with the sellers of mobile homes collecting the rent that Hacienda is not allowed to charge in the form of a premium on the sale of the mobile home. This premium, Hacienda argues, constitutes a taking of its property as the Ordinance is applied.

In the district court Hacienda brought five claims: (1) an action for declaratory relief, (2) a claim of violation of the 5th amendment, (3) a claim of violation of civil rights pursuant to § 1983, (4) a claim of denial of equal protection, and (5) a petition for writ of administrative mandamus. *Hacienda Valley Mobile Estates v. City of Morgan Hill*, No. C–01–20976– RMW, slip op. at 3 (N.D.Cal. Apr. 15, 2002). The district court dismissed the equal protection claim with prejudice for failing to file under § 1983 and for failing to meet the statute of limitations. *Id.* at 11. The claim for violation of the 5th Amendment was similarly dismissed with prejudice for failure to file under § 1983. *Id.* at 13. The claims for declaratory relief and for violation of civil rights pursuant to § 1983 were dismissed with prejudice to the extent that they were facial claims, and without prejudice to the extent that they constituted as-applied challenges. *Id.* at 13. Finally, the district court declined to extend supplemental jurisdiction to the petition for writ of administrative mandamus. *Id.* at 12.

Hacienda appeals only the taking claim that underlies both the action for declaratory relief and the § 1983 claim.

## II. Standard of Review

■ We review district court decisions to dismiss for lack of subject matter jurisdiction de novo. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir.2000). The district court's decision to dismiss for lack of ripeness is also reviewed de novo. *Ross v. Alaska*, 189 F.3d 1107, 1114 (9th Cir.1999).

## III. Facial Claim

Hacienda challenges the constitutionality of the Ordinance, claiming that it creates a "premium" which amounts to an uncompensated regulatory taking. Ha-

cienda vigorously argues that its challenge is as-applied. To place its argument in context we draw here the distinction between facial and as-applied challenges to regulatory taking claims.

The district court cites *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680 (9th Cir.1993), to support its conclusion that Hacienda's challenge, as a premium challenge, must be a facial challenge. *Hacienda Valley,* at 4–5. In *Levald,* we stated that a premium claim based on the passage of a rent-control ordinance is a facial claim: "It is not the particular *application* of the statute that gives rise to the premium; the premium arises solely from the existence of the statute itself." *Levald,* 998 F.2d at 689 (emphasis in the original) (footnote omitted). Putting aside for the moment the actual implications of *Levald,* if the district court is correct that Hacienda's claim is a facial claim, then the claim should fail.

To determine if facial claims are appropriately before the court, the court must perform a two-step analysis. First, it must determine whether the claim is ripe under *Williamson County.* Then the court must determine whether the claim is barred by a statute of limitations. The *Williamson County* ripeness analysis is also a two-step inquiry. 473 U.S. at 186, 105 S.Ct. 3108. The plaintiff must have obtained a final decision from the governmental authority charged with implementing the regulations and must have pursued compensation through state remedies unless doing so would be futile. *Id.* at 194–95.

Facial challenges are exempt from the first prong of the *Williamson* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation. *Yee v. City of Escondido,* 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). The state remedies prong, however, does apply to facial challenges. Hacienda has not sought compensation in state courts;[1] therefore, it must argue that it should be excused from the state remedies requirement because such action would be futile. If Hacienda were successful in showing that recourse to state courts would be futile, then the claim would be considered ripe and would be measured against the statute of limitations. Taking claims must be brought under § 1983. *Azul-Pacifico, Inc. v. City of Los Angeles,* 973 F.2d 704, 705(9th Cir.1992). The statute of limitations for bringing § 1983 claims in California was one year at the time Hacienda's claim accrued.[2] *Levald,* 998 F.2d at 688. The date the claim accrued is therefore critical for Hacienda. We further held in *Levald* that the date of accrual is either (1) the date compensation is denied in state courts, or (2) the date the ordinance is passed if resort to state courts is futile. *Id.* Because the Ordinance was passed in 1992 and this claim was brought in 2001, Hacienda's claim, if ripe because resort to state courts would be futile, would be barred by the statute of limitations.

Thus, if Hacienda's claim is treated as a facial claim it will either fail because it is not ripe, or, if it is ripe, it will be barred by the statute of limitations. Recognizing this, Hacienda argues that its claim is not a facial claim, but an "as-applied" or "mixed" claim.[3]

**1.** Hacienda argues that its application to the rent control board constituted adequate pursuit of state remedies. We disagree and address this question in Part V of this opinion.

**2.** In 2002, California extended its statute of limitations for personal injury actions from one year to two years. *See* Cal.Code Civ. Proc. § 335.1 (2003).

**3.** Hacienda argues that as-applied claims and mixed claims should be treated the same way.

## IV. Facial v. As–Applied Claims

If vacancy control ordinances always result in premiums, they should always be treated as facial claims because the harm alleged would arise automatically with the passage of the ordinance. *See Levald,* 998 F.2d at 689. However, Hacienda makes a persuasive argument that a rent-control ordinance will not always result in a premium. At the time its brief was filed, Hacienda requested this court to take judicial notice of two California cases in which the courts found, through intensive study of the facts, that rent-control ordinances in the cities of Cotati and Carpinteria had not created premiums. *Cashman v. City of Cotati,* No. C 99–03641, (N.D.Cal. Sept. 4, 2002); *In re Vista de Santa Barbara Associates, LLC* (Hearing Officer's Decision, City of Carpinteria) (Dec. 20, 2002). Hacienda therefore argues that the statute of limitations should not begin to run until a premium actually exists and is reasonably discoverable.

The district court relies on a string of cases originating with *Levald* for the proposition that premium challenges must be analyzed as facial challenges. In *Levald* the petitioner was challenging a vacancy control provision very similar to the one at issue in the case. Levald argued that the "statutory scheme" created a premium on the mobile homes in the park. *Levald,* 998 F.2d at 683. Levald did not argue that any factors other than the vacancy control ordinance and residency laws had played any part in causing the premium. Responding to that argument, this court wrote, "[t]he gravamen of Levald's complaint is that the statutory scheme does not substantially advance its stated purpose.... It is not the particular *application* of the statute that gives rise to the premium; the premium arises solely from the existence of the statute itself." 998 F.2d at 689 (emphasis in the original).

A close reading of the opinion shows that it was *not* the fact that Levald was bringing a premium challenge that made it a facial challenge, but the *way* that Levald supported the argument—by attacking only the laws—that made it a facial challenge. In fact, we noted that an as-applied challenge to a premium was possible, but rejected it in the case because Levald had not argued the proposition appropriately. *Levald,* 998 F.2d at 689 n. 3; *see also Yee,* 503 U.S. at 533–34, 112 S.Ct. 1522.[4]

■ Here, Hacienda is careful to argue that the Ordinance alone is not the basis of its challenge. Instead, it alleges that the Ordinance, complex economic factors, and the Commission's decision not to grant the bulk of Hacienda's rent increase all combined to create a premium in the Park. We conclude that these allegations are sufficient to support an as-applied challenge. We must now determine whether the challenge is ripe.[5]

This argument is supported by *Santa Monica Beach, Ltd. v. Superior Court,* 19 Cal.4th 952, 81 Cal.Rptr.2d 93, 968 P.2d 993, 998 (1999). Because the distinction does not affect our decision, we will assume for purposes of this opinion that they should be treated identically.

4. The City's reliance on *Carson Harbor Village Ltd. v. City of Carson,* 37 F.3d 468, 474 n. 5 (9th Cir.1994), *overruled on other grounds by WMX Technologies v. Miller,* 104 F.3d 1133, 1136 (9th Cir.1997) (en banc), for the proposi-

tion that a premium challenge must be a facial challenge is misplaced. In *Carson Harbor,* as in *Levald,* the petitioner was challenging a law that it claimed was the sole source of the premium. *Id.* Hacienda's case is distinguishable because it claims that the law was one of several factors that, when applied to its Park, created a premium.

5. Because we conclude that Hacienda's claim is an as-applied claim and therefore eligible for review if ripe, we do not need to address its argument under *Palazzolo v. Rhode Island,* 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d

## V. As–Applied Claims

■ As-applied challenges must meet both prongs of the *Williamson County* ripeness analysis. Before an as-applied challenge is ripe the appellant must have obtained a final decision from the entity charged with implementing the regulation and must have sought compensation through state remedies unless doing so would be futile. *Williamson County*, 473 U.S. at 194–95, 105 S.Ct. 3108.

### A. *Final Decision*

■ The district court found that Hacienda had fulfilled the first prong by getting a final decision from the Commission. We agree. Having received an adverse result at the Commission, Hacienda's next step to challenge the decision under state procedures is to seek a writ of administrative mandamus in state superior court. In *Williamson County* the Supreme Court made it clear that resort beyond the "initial decision-maker" is not necessary to fulfill the final decision prong of the ripeness analysis. 473 U.S. at 193, 105 S.Ct. 3108. Here the Commission has issued its final decision, and there are no further procedures available to Hacienda to challenge that decision short of resort to state courts for a writ of administrative mandamus.

The City contends that the recent Supreme Court case, *National Park Hospitality Ass'n v. Department of the Interior*, 538 U.S. 803, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003), has expanded the final decision prong to require something more than a final administrative decision. In that case the petitioners were challenging a regulation that had been promulgated by the National Park Service but had not yet been applied to any particular party. Using general ripeness standards, not the specialized *Williamson County* analysis, the Supreme Court concluded the case could not be ripe until the regulation was actually applied to a party. That holding does not affect our conclusion that Hacienda has fulfilled the final decision prong because in this case the Commission has already applied its regulations to Hacienda, creating an actual controversy that does not require further factual development.

### B. *State Remedies*

In *Williamson County* the Supreme Court concluded that a taking is not complete until compensation for a deprivation has been sought and denied. Therefore, the second prong of the *Williamson County* ripeness analysis requires the petitioners to seek state remedies unless doing so would be futile. 473 U.S. at 194–95, 105 S.Ct. 3108.

Hacienda argues that its application to and denial by the Commission fulfills this requirement. In land use regulatory taking cases, such as *Williamson County*, the initial interaction between the landowner and the government is not framed in terms of money. When passing the local ordinance at issue or making a zoning decision, the municipalities generally have not had an opportunity to address the financial impacts on individual landowners. As a result, landowners must take follow-up action to seek state remedies before their claim is ripe.

The situation of rent control adjustments is admittedly different. When the Commission granted only $4.03 of Hacienda's requested rent increase, it had, at that moment, an opportunity to remedy the alleged taking it was creating by granting a higher increase. Borrowing from due process analysis, Hacienda calls that moment a "predeprivation opportunity" for

592 (2001), that a statute should not be immune from constitutional review.

compensation. Hacienda argues that the Commission's failure to take advantage of the opportunity gave two different and simultaneous significances to the decision.

First, Hacienda argues that the Commission's refusal to grant a larger rent increase was the decisive factor in the establishment of a deprivation—the "taking" portion of a "taking without compensation." If the Commission had granted the full increase presumably the premium would have disappeared and the "complex interaction" of the Ordinance and the economic environment that set up the taking would have been mitigated. The Commission's decision not to grant the increase was the final factor in the creation of the premium, and therefore the deprivation.[6]

■ Second, Hacienda contends that its application to the Commission for a rent increase was adequate pursuit of state remedies. If the taking *had* been complete before petition to the Commission, it seems logical that the first state remedy Hacienda should seek is a rent increase with the Commission. Whether such action would be sufficient pursuit of state remedies is a question we leave for another day. However, Hacienda is arguing that the taking was not complete until the Commission denied the petition. Therefore, to grant Hacienda's claim, we would have to decide that the Commission's denial of the increase acted as both a completion of the deprivation *and* a denial of compensation. Hacienda argues that this duality of significance is supported by the Supreme Court's analogy to *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), in *Williamson County*. 473 U.S. at 195, 105 S.Ct. 3108. However, the *Williamson County* Court declined to complete the analogy with *Parratt*, expressly stating that the Court had not recognized a right to predeprivation compensation under the Just Compensation Clause. *Id.* at 195 n. 14, 105 S.Ct. 3108.

Hacienda seems to be arguing that the reason that a pre-deprivation right has never been recognized in Just Compensation cases is that such a remedy is not convenient or practical in the permitting cases that make up most of the Just Compensation Clause jurisprudence. While we do not comment on the possibility of a predeprivation remedy in the Just Compensation Clause, we know that it is not required. We think the state must be aware that it is denying compensation to an alleged taking when it takes an action. When the Commission denied Hacienda's rent increase, we are not convinced that it was aware that its actions would constitute a taking. As Hacienda itself argues, when it stood before the Commission, the "taking" had not yet occurred. We therefore conclude that a taking and the pursuit of a remedy for the taking were not simultaneous in this case.

### 1. *Futility of State Remedies*

Hacienda makes two arguments to support its claim that resort to state remedies would be futile. First it argues that the remedy available, the "*Kavanau* adjustment," is inadequate. Second it argues that the standard of review employed by the California state courts in taking cases is unconstitutionally deferential to the government.

In *Kavanau v. Santa Monica Rent Control Board*, the California Supreme Court was asked to decide the appropriate

---

**6.** Hacienda is making a fine point here when it argues that the taking was complete at the moment the Commission denied the majority of the rent increase. If the taking had actually arisen earlier, and the petition to the Commission were considered an attempted remedy, this claim would be barred by the statute of limitations.

way to pay damages for a taking claim arising out of a rent control ordinance. 16 Cal.4th 761, 66 Cal.Rptr.2d 672, 941 P.2d 851, 855 (1997). Prior litigation had already determined that a taking had occurred and the amount due to the petitioner. Rather than imposing an immediate damages payment on the government, the court determined that the taking claim could be obviated by eliminating the due process violation that was its basis. Therefore, the court decided that adjusting future rents to give Kavanau a fair return over time would "dispel" the due process violation and eliminate the taking. *Id.* at 867. Thus, the appropriate remedy would be a return to the rent control agency: "We think one of the costs associated with rent control that the Board must consider is the cost to Kavanau of any confiscatory rent ceilings the Rent Board previously imposed on the apartments in question." *Id.* at 865.

█ Hacienda argues that it is not likely to receive adequate compensation for its taking claim if it is forced to apply to California courts for a *Kavanau* adjustment that will then be imposed by the Commission. Hacienda implies that it will not be compensated if it is forced to return to the agency that denied the petition in the first place. Unfortunately, Hacienda was not able to direct us to, nor did our own research reveal anything regarding how the *Kavanau* adjustment works in practice. Because we are left with uncertainty as to the efficacy of the adjustment, we cannot assume that its application would be futile. In *Austin v. City of Honolulu*, we held that unless the state courts have specifically heard the cause of action at issue and denied it, recourse to state courts cannot be considered futile. 840 F.2d 678, 681 (9th Cir.1987). Therefore, Hacienda's mere allegation that the *Kavanau* adjustment is not an adequate remedy

is not sufficient cause to justify avoiding state courts.

Hacienda also argues that the *Kavanau* adjustment is an inadequate remedy because it requires the petitioner to go through the California court system once to get the remedy and potentially a second time to enforce the remedy. In *Palazzolo*, the Supreme Court cited *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 698–99, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), for the proposition that government may not "burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision." 533 U.S. 606, 621, 121 S.Ct. 2448, 150 L.Ed.2d 592. Although the route to the *Kavanau* adjustment is longer than Hacienda would like, we do not believe it is the type of procedure the Supreme Court meant to eliminate in *Palazzolo* and *Del Monte Dunes*. Because the judicial path to the *Kavanau* adjustment is certain and well-defined, we believe that Hacienda will receive a final answer from the California court system and will not be frustrated by an elusive final decision as was the case in *Del Monte Dunes*.

Hacienda's second futility argument is that the California courts apply a standard of review in taking cases that is unconstitutionally deferential to the government. To meet the futility requirement, Hacienda must show that California state courts have explicitly rejected Hacienda's theory in the case. *Levald*, 998 F.2d at 689. Therefore, Hacienda must show, not only that the California courts' interpretation of federal taking law is incorrect, but that California's improper interpretation has already led to an explicit rejection of Hacienda's premium-based taking theory. Hacienda refers to several cases to support its argument that the California courts do not properly apply the constitutionally mandated standards of scrutiny.

None of them shows an explicit rejection of a premium-based taking theory.

*Kavanau*, the leading California Supreme Court case relied on by Hacienda, does not decide the taking issue at all. Instead, the court decided that remedying the due process claim on which the taking claim was based would "obviate" the taking claim. 66 Cal.Rptr.2d 672, 941 P.2d at 865.

 The second case put forward by the petitioner is *Santa Monica Beach, Ltd. v. Superior Court*, 19 Cal.4th 952, 81 Cal.Rptr.2d 93, 968 P.2d 993(Cal. 1999). When it performed the taking analysis in that case, the California Supreme Court used two different standards of review. First it applied the "substantially advance" test. This test finds a taking where the regulation in question fails to substantially advance a legitimate state interest. *See Richardson v. City of Honolulu*, 124 F.3d 1150, 1165–66(9th Cir. 1997). The California Supreme Court worried that a test derived from land use cases should not be applied to taking claims arising out of situations akin to price control, such as rent control, but nevertheless determined that under this heightened standard of review, the rent control scheme was constitutional. *Santa Monica Beach*, 81 Cal.Rptr.2d 93, 968 P.2d at 1007. The second test the California Supreme Court applied was the "arbitrary regulation of property rights" test, which it declared to be the standard test for general legislation. The "arbitrary regulation" test would find a taking only where the regulation creates arbitrary impacts on property rights, for instance, where a zoning law prohibits non-residential use, but the neighborhood has since changed to industrial use. *Id.* at 1006.

Although the California Supreme Court expressed deep reservations about the "substantially advance" level of scrutiny, it concluded that the rent control scheme at issue was constitutional whether examined under the "substantially advance" standard or the more deferential "arbitrary regulation of property rights" standard the court preferred. *Id.* at 1005. It is true that *Santa Monica Beach* shows the California Supreme Court's reluctance to apply the "substantially advance" standard that this court has used to evaluate premium-based taking claims in the past. *See Richardson*, 124 F.3d at 1165–66. However, it is not an explicit rejection of Hacienda's theory of the case. *Santa Monica Beach* is not a premium-based taking challenge, and it does not totally foreclose the possibility that the California courts will use the "substantially advance" test in the future.

Hacienda cites *Montclair Parkowners Ass'n v. City of Montclair*, 76 Cal.App.4th 784, 90 Cal.Rptr.2d 598 (1999), to support its contention that, in the wake of *Santa Monica Beach*, the California courts will not use the "substantially advance" test. In *Montclair*, the appellate court discussed the appropriate standard of scrutiny for mobile home rent control cases at length before concluding that the reasoning used in *Santa Monica Beach* applied equally well in mobile home vacancy control cases as it had in apartment rent control. The *Montclair* court read *Santa Monica Beach* to mean that the appropriate standard of scrutiny is "arbitrary regulation of property rights" rather than "substantially advance a legitimate state interest."

The theory put forward by the plaintiffs in *Montclair* is the closest to Hacienda's of the three cases discussed by the appellant. It is, however, distinguishable. The most important distinction is the basis of the complaint. The petitioners in *Montclair* were bringing their claim under the California Constitution, having specifically reserved their federal rights. *Id.* at 789. *Montclair* is not a good predictor of how

the California courts will interpret a claim under the United States Constitution. Moreover, *Montclair* dealt with a facial challenge to a vacancy control ordinance. California courts could treat as-applied claims differently.

In sum, none of the cases Hacienda puts forward has actually explicitly declined to apply the substantially advance level of scrutiny to a premium-based taking claim. Therefore, we cannot conclude that it would be futile for Hacienda to pursue state remedies in California courts. Hacienda's claim does not qualify for a futility exception to the state remedies requirement.

### VI. Conclusion

Analyzing Hacienda's as-applied taking claim under the *Williamson County* ripeness standards, we conclude that it is not ripe. Although Hacienda has met the final decision requirement by receiving a final decision from the Commission, it has not pursued state remedies, and therefore fails under the second prong of the analysis.

We are not convinced that Hacienda's application to the Commission for a rent increase acted as a simultaneous taking and denial of a state remedy for the taking. We think that the taking and the remedy for the taking are two separate acts. Finally, we conclude that Hacienda has not shown that recourse to state remedies would be futile. Although the remedies offered by California are not automatic, it is not certain that Hacienda's claim will be rejected. Therefore, it must pursue its state remedies before bringing its claim in federal courts.

We are sympathetic to the Hacienda's concerns about issue preclusion and res judicata, but we believe that Hacienda may reserve its federal claims while it pursues its state remedies. If the California courts do apply an unconstitutionally deferential standard of review, Hacienda's federal taking claim will not be precluded on appeal to federal courts because the issue will not have been properly litigated in state court. *See Dodd v. Hood River County*, 136 F.3d 1219, 1227 (1998) (holding that a party may not re-ligitate in federal court an issue identical to one that has already been litigated in state court under the same standards).

Because we conclude that Hacienda's claim is not ripe, we affirm the district court's dismissal for lack of subject matter jurisdiction.

AFFIRMED.