# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MANUFACTURED HOME COMMUNITIES
INC.; MHC OPERATING LIMITED
PARTNERSHIP, an Illinois limited
partnership,

        *Plaintiffs-Appellants,*

        v.

CITY OF SAN JOSE; ENIS RICE; GARY
DEWET; MARTIN VANCIL; MARSHA
SKRATT,

        *Defendants-Appellees.*

No. 03-16766

D.C. No.
CV-03-01713-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued April 14, 2005
Submitted August 17, 2005
San Francisco, California

Filed August 23, 2005

Before: Donald P. Lay,* Betty B. Fletcher, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge B. Fletcher

---

*The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

## COUNSEL

Elliott L. Bien, Bien & Summers, LLP, Novato, California, for the appellants.

David Bradford and Lisa T. Scruggs, Jenner & Block, LLC, Chicago, Illinois, for the appellants.

Richard Doyle, George Rios, and Shannon Smyth-Mendoza, Office of the City Attorney, San Jose, California, for appellee City of San Jose.

Bruce E. Stanton, Law Offices of Bruce E. Stanton, San Jose, California, for appellees Enis Rice, Gary DeWet, Martin Vancil, and Marsha Skratt.

## OPINION

B. FLETCHER, Circuit Judge:

Manufactured Home Communities, Inc.[1] and MHC Operat-

---

[1]Appellant Manufactured Home Communities, Inc. recently changed its name to Equity Lifestyle Properties, Inc. For continuity, we to refer to the Appellant by its name at the time of filing.

ing Limited Partnership[2] (collectively MHC) sued the City of San Jose challenging the City's Mobilehome Rent Ordinance as unconstitutional. MHC also sued four individual tenants of the MHC mobilehome park: Enis Rice, Gary DeWet, Martin Vancil, and Marsha Skratt (collectively Individual Defendants). MHC argued that the Individual Defendants are not eligible for rent control under California state law and are, thus, in violation of the City's Ordinance and California state law for refusing to pay increased rent.

MHC appeals the district court's dismissal of MHC's complaint for various jurisdictional and res judicata problems. We affirm the district court's decision on the basis of res judicata, untimeliness, failure to state a federal question, lack of supplemental jurisdiction, and California's statute of limitations.[3] Although it does not affect the outcome of this case, we reverse the district court's holding on the *Rooker-Feldman* doctrine.[4] We reverse and remand the matter of attorneys' fees.

## Jurisdiction and Standard of Review

The district court dismissed several of MHC's claims for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. *Manufactured Home Cmtys., Inc. v. San Jose*, 358 F. Supp. 2d 896 (N.D. Cal. 2003). The district court affirmed its dismissal under res judicata. The district court also dismissed MHC's claims for lack of ripeness, want of supplemental jurisdiction, and failure to comply with California's statute of limitations. This court has jurisdiction to review the district court's decision pursuant to 28 U.S.C. § 1291. *Hacienda Valley Mobile Estates v. City of Morgan Hill Rent Review Comm'n*, 353 F.3d 651, 653 (9th Cir. 2003).

---

[2]D/b/a Westwinds Manufactured Home Community.

[3]This court "may affirm a dismissal on any basis supported by the record, even if the district court relied on different grounds or reasoning." *Maldonado v. Harris*, 370 F.3d 945, 949 (9th Cir. 2004).

[4]*District Court of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

*Rooker-Feldman* jurisdiction claims are reviewed de novo. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Res judicata claims are also reviewed de novo. *Palomar Mobilehome Park Ass'n. v. City of San Marcos*, 989 F.2d 362, 363 (9th Cir. 1993). Ripeness is a question of law, and it is reviewed de novo. *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1050 (9th Cir. 2004). Whether a district court had supplemental jurisdiction is reviewed de novo; a district court's decision to decline supplemental jurisdiction is reviewed for abuse of discretion. *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). Whether a claim is barred by a statute of limitations and when a statute of limitations begins to run are reviewed de novo. *Cashman v. City of Cotati*, 374 F.3d 887, 892 (9th Cir. 2004). The facts alleged in a complaint dismissed for lack of subject matter jurisdiction are accepted as true. *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004).

## Factual Background and Procedural History

The City of San Jose passed a Mobilehome Rent Ordinance in 1986. San Jose Municipal Code (SJMC) ch. 17.22. The Ordinance includes, among other things, rent control provisions. The rent control provisions allow for a maximum annual rent increase calculated in relation to the Consumer Price Index. SJMC § 17.22.450. Proposed increases exceeding the calculated amount are subject to administrative review.

The maximum annual rent increase is supposed to allow mobilehome park owners a fair and reasonable return on their investment. A fair return is defined as an amount allowing an owner to maintain the same level of income, adjusted for inflation, as the owner received in the "base year." SJMC § 17.22.550. This system is known as the maintenance of net

operating income approach to stabilizing rents. The base year under the Ordinance is 1985. SJMC § 17.22.490.

If a mobilehome park owner believes the maximum annual rent increase will not provide a fair return, then he may petition the City for a rent increase. SJMC § 17.22.700. An administrative hearing officer will conduct a hearing on the petition. SJMC § 17.22.750. At the hearing there is a rebuttable presumption that the level of income received in the base year provides a fair and reasonable return. SJMC § 17.22.480. An owner may rebut this presumption by showing that operating expenses were unusually high or low in the base year or that gross income was disproportionate in the base year. SJMC § 17.22.510. Decisions by the administrative hearing officers are subject to judicial review. SJMC § 17.22.1040.

Individual mobilehome owners may voluntarily exempt themselves from the City's rent control provisions. SJMC § 17.22.370. Certain mobilehome units are automatically exempt from the provisions. SJMC § 17.22.350-360. Under California's Civil Code "if a mobilehome space within a mobilehome park is not the principal residence of the homeowner and the homeowner has not rented the mobilehome to another party, it shall be exempt" from the City's Ordinance. Cal. Civ. Code § 798.21(a). The burden of proving a unit is exempt from the rent control provisions or that a rent increase is exempt from the provisions rests with the park owner. SJMC §§ 17.22.390 & 17.22.452.

MHC, a publicly traded real estate investment company, owns and operates Westwinds mobilehome park in San Jose, California. MHC purchased Westwinds in August 1997. Due to an increase in ground rent in 1996, MHC says the park's operating expenses increased by $1.3 million that year. In May of 1998, MHC petitioned the City's rental dispute program for a special rent increase to cover the increased costs. Unfortunately, Westwinds' financial records for the base year, 1985, were destroyed by the park's previous owner. MHC

only has financial records for Westwinds for the years 1996 and 1997. Although MHC's initial petition for review included an estimate of the 1985 numbers, MHC now says an accurate estimate of the 1985 numbers is impossible. MHC submitted an amended petition using 1996 as the base year for determining whether a rent increase was appropriate.

After an administrative hearing, an administrative hearing officer ruled against MHC's petition for a rent increase in October of 1998.[5] The hearing officer determined that financial information for 1996 could not be used as a base and only 1985 could be used. MHC then sought a writ of administrative mandamus in California Superior Court pursuant to California Civil Procedure Code § 1094.5. MHC alleged that the failure to grant a rent increase was arbitrary, capricious, an abuse of discretion, and in disregard of the uncontradicted evidence. MHC argued the City's actions violated the Ordinance and the Constitutions of California and the United States.[6] The Superior Court ruled in favor of MHC, deeming the Ordinance unconstitutional because it did not provide a mechanism for calculating a fair return when mobilehome park owners cannot, through no fault of their own, prove actual base year net operating income.

In response, the City passed an Urgency Ordinance amending the Ordinance.[7] City of San Jose Urgency Ordinance No. 25958. The Urgency Ordinance allowed for estimates of base

---

[5]Approximately eighty-five percent of Westwinds' unit owners settled with MHC, accepting a rent increase, prior to the hearing officer's decision. This leaves approximately sixty-eight mobilehome owners, subject to a potential rent increase pending the outcome of this lawsuit.

[6]"[A] claim involving federal constitutional rights may be joined to a California mandamus action." *Clark v. Yosemite Cmty. Coll. Dist.*, 785 F.2d 781, 787 n.5 (9th Cir. 1986).

[7]The City also appealed the Superior Court's decision. In light of the City's Urgency Ordinance, the appeal was dismissed as moot by the California Court of Appeals. *MHC Operating Ltd. P'ship v. City of San Jose*, 130 Cal. Rptr. 2d 564, 571 (Cal. Ct. App. 2003).

year income and expenses when exact information is unavailable. SJMC § 17.22.495. It also said that "[n]o provision . . . shall be applied so as to prohibit the Administrative Hearing Office from granting a rent increase that is demonstrated as necessary." SJMC § 17.22.030.

After passage of the Urgency Ordinance, MHC repetitioned for a rent increase. MHC again provided only 1996 financial information. The administrative hearing officer held a hearing in November of 1999. At the hearing MHC presented evidence that it is impossible to estimate the 1985 financial information. The City presented evidence that it is possible to estimate the 1985 financial information. The hearing officer found it possible to estimate the 1985 financial data and denied MHC's petition without prejudice.

MHC then petitioned for a supplemental writ of administrative mandamus in Superior Court. MHC abandoned its constitutional claims before the Superior Court and challenged only the hearing officer's interpretation of the Ordinance and the officer's factual finding that MHC is able to estimate the 1985 financial data. The Superior Court said that the City remedied the constitutional problems with the Ordinance by passing the Urgency Ordinance, noting MHC "no longer challenges its constitutionality." The court affirmed the hearing officer's interpretation of the Ordinance and affirmed the officer's decision that estimating the 1985 financial information is possible for the purposes of calculating a fair return under the Ordinance.

MHC then appealed to the California Courts of Appeal. MHC argued that the City hearing officer and the Superior Court misinterpreted the Urgency Ordinance. MHC also revived its constitutional challenge to the Ordinance. The Courts of Appeal characterized MHC's challenge by quoting MHC's opening brief saying, "[T]he issues before this Court arise out of the legal conclusions that were drawn by the Hearing Officer and whether those conclusions are constitu-

tionally proper." *MHC Operating Ltd. P'ship*, 130 Cal. Rptr. 2d at 573.

The Courts of Appeal affirmed the Superior Court's decision. Recognizing the constitutional considerations inherent in analyzing rent control ordinances, the Courts of Appeal said, "Fair return is the constitutional measuring stick by which every rent control board decision is evaluated." *Id.* at 576 (quoting *Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.*, 82 Cal. Rptr. 2d 569, 574 (Cal. Ct. App. 1999)). The court found that San Jose's Ordinance, on its face, provides owners with a fair return. The court also found that MHC did not prove the hearing officer's interpretation and application of the Ordinance were either unreasonable or unlawful. Based on the evidentiary record, the court found MHC could estimate financial expenses for 1985. Thus, the court found the Ordinance on its face and as applied does not deprive MHC of a fair return. The California Supreme Court declined discretionary review of the Courts of Appeal's decision.

In May of 2002, MHC pursued a second avenue for raising rents at Westwinds. MHC notified four mobilehome owners, the Individual Defendants, that under California Civil Code § 798.21 they were not eligible for rent control. This section of the Code exempts mobilehome owners who also own second homes from qualifying for rent control. MHC believes the Code exempts the Individual Defendants from the City's rent control Ordinance. The Individual Defendants argue they do not qualify as second homeowners as defined by the statute and/or they qualify for an exception to the exemption under the statute. Cal. Civ. Code § 798.21(f) (listing exception). The City Attorney issued a letter saying the Individual Defendants were not covered by the second homeowner exemption. MHC never petitioned the City's administrative process to raise the Individual Defendants' rent. Instead, MHC sued the City and the Individual Defendants in federal court.

In April of 2003, MHC in its complaint petitioned the federal district court in the Northern District of California for relief against the City and the Individual Defendants. MHC brought eight "Counts" before the district court. The Counts are:

I.      The City's Ordinance denies MHC procedural due process under the Fourteenth Amendment in violation of 42 U.S.C. § 1983 by denying a fair hearing and imposing arbitrary, capricious, and unreasonable burdens on MHC.

II.     The City's Ordinance denies MHC equal protection under the Fourteenth Amendment in violation of 42 U.S.C. § 1983 by according MHC's property rights disparate and injurious treatment compared to other mobilehome park owners.

III.    The City's hearing officer is biased thus denying MHC procedural due process.

IV.    The City denied MHC procedural due process by not giving notice and a fair hearing before determining the Individual Defendants are not subject to the second homeowner exemption.

V.     MHC requests declaratory relief interpreting California Civil Code § 798.21 to mean the Individual Defendants are subject to the second homeowner exemption.

VI.    MHC requests enforcement of the second homeowner exemption against the City and the Individual Defendants.

VII. The City Ordinance as applied violates the Fifth Amendment's Takings Clause.

    A. The Ordinance allows tenants to sell their homes for a premium (based on rent control savings), the premium transfers value of MHC's land to the tenants.

    B. The Ordinance does not provide a fair and reasonable return on MHC's investment.

VIII. The City's Ordinance does not substantially advance a legitimate governmental objective. It is facially invalid as violating the Fifth Amendment's Takings Clause.

The City moved to dismiss MHC's complaint under the *Rooker-Feldman* doctrine, *Younger* abstention, ripeness, failure to present a federal question, and California's statute of limitations. The City also moved for attorneys' fees and sanctions.

The district court granted the City's motion to dismiss and granted the City's attorneys' fees. The court denied sanctions. The district court dismissed Counts I (procedural due process), II (equal protection), and III (biased hearing officer) under *Rooker-Feldman* and res judicata. The district court dismissed Counts IV (procedural due process), V (declaratory relief), and VI (enforcement), as not ripe for adjudication and for failing to present a federal question. The district court also declined to exercise supplemental jurisdiction over Counts V and VI as related to the Individual Defendants. The takings claims, Counts VII (as applied) and VIII (facial), were dismissed as untimely (ripeness and statute of limitations) and as improper under *Rooker-Feldman* and res judicata. MHC filed a timely Notice of Appeal on September 16, 2003.

**Analysis**

## 1.  *Rooker-Feldman* — Counts I, II, III, VII, VIII

The district court dismissed the bulk of MHC's complaint, including the procedural due process, equal protection, and takings claims, under the *Rooker-Feldman* doctrine. On appeal MHC argues the Ninth Circuit's opinion in *Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003), issued after the district court's order, requires reversal of the district court's decision.[8] We agree and find the *Rooker-Feldman* doctrine does not bar federal jurisdiction over MHC's complaint.

**[1]** The *Rooker-Feldman* doctrine stands for the proposition that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel*, 341 F.3d at 1154. This court's opinion in *Noel* provides a detailed history of how *Rooker-Feldman* developed. *Id.* at 1154-65. It also clarifies the narrow scope and application of the doctrine. *Noel* offers this "general formulation" of the doctrine:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

---

[8]The Supreme Court affirmed *Noel*'s approach to *Rooker-Feldman* in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517 (2005). Since the *Noel* decision the Ninth Circuit has reversed several district court decisions dismissing claims under the *Rooker-Feldman* doctrine. *See, e.g.*, *Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004); *Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004).

*Id.* at 1164.[9] Here MHC sues the City of San Jose[10] (an adverse party), not a state court.[11] MHC is challenging the City's interpretation of the Ordinance. MHC's complaint does not directly challenge a state court's factual or legal conclusion. MHC's complaint to the district court is, therefore, not a forbidden appeal under *Rooker-Feldman*.

[2] The district court, however, observed the interconnectedness of MHC constitutional claims with the state courts' holding that MHC is capable of estimating the 1985 financial figures and that MHC is capable of receiving a fair return as constitutionally mandated. The district court dismissed MHC's constitutional claims as "inextricably intertwined" with issues raised in state court and, thus, inappropriate for federal review under *Rooker-Feldman*. After the district court's decision, this court clarified the proper application of the "inextricably intertwined" test. *Noel*, 341 F.3d at 1157-58. Under *Noel,* claims are dismissed as "inextricably intertwined" only when an improper appeal under *Rooker-Feldman* is already before the district court. *Noel* says:

> The premise for the operation of the "inextricably intertwined" test in *Feldman* is that the federal plaintiff is seeking to bring a forbidden de facto appeal. The federal suit is not a forbidden de facto appeal

---

[9]The Supreme Court affirmed the substance of this formulation in *Exxon Mobil Corp.*, saying, "The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 125 S. Ct. at 1521-22.

[10]The claims against the Individual Defendants do not involve the *Rooker-Feldman* Doctrine.

[11]MHC's brief specifically says it is not suing any state court: "Accordingly, MHC's federal complaint sought relief against the city and the second homeowner tenants — not against the state courts or their final judgment."

> because it is "inextricably intertwined" with some-thing. Rather, it is simply a forbidden de facto appeal. Only when there is already a forbidden de facto appeal in federal court does the "inextricably intertwined" test come into play: Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman*, that federal plaintiff may not, as part of the suit in which the forbidden appeal is brought, seek to litigate an issue that is "inextricably inter-twined" with the state court judicial decision from which the forbidden de facto appeal is brought.

*Id.* at 1158. We already determined MHC's appeal is not a forbidden appeal, thus, while MHC's constitutional chal-lenges are related to the state courts' factual and legal conclu-sions, they are not "inextricably intertwined" for the purposes of *Rooker-Feldman*. The district court's dismissal of MHC's claims on the basis of the *Rooker-Feldman* doctrine is reversed.

The relationship between MHC's constitutional challenges and the California state courts' legal and factual conclusions is best addressed under preclusion law. As the Supreme Court recently made clear: "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclu-sion." *Exxon Mobil*, 125 S. Ct. at 1527 (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993); accord *Noel v. Hall*, 341 F.3d 1148, 1163-64 (9th Cir. 2003)). We now turn to California's preclusion law to deter-mine if MHC's constitutional claims are reviewable in federal court.

## 2.   Res Judicata — Counts I, II, III, VII, VIII

**[3]** Federal courts are required to give full faith and credit to state court judgments under 28 U.S.C. § 1738. *See San*

*Remo Hotel, L.P. v. City & County of San Francisco*, 125 S. Ct. 2491 (2005). Generally "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). To determine the preclusive effect of a state court judgment federal courts look to state law. *Palomar Mobile-home Park Ass'n. v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993). California's res judicata doctrine is based on a primary rights theory. The California Supreme Court explained that the primary rights theory:

> [P]rovides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.

*Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 306 (Cal. 2002) (citations omitted). A party may bring only one cause of action[12] to vindicate a primary right. *Id.* at 302. Claims not

---

[12]MHC argues, based on a decision by the California Courts of Appeal, that a mandamus proceeding is a special proceeding, not a cause of action, and cannot have preclusive effect. *See Mata v. City of Los Angeles*, 24 Cal. Rptr. 2d 314, 319 (Cal. Ct. App. 1993). A later decision by that court clarifies, however, that the *Mata* decision did not create such a holding. *See Federation of Hillside & Canyon Assns. v. City of Los Angeles*, 24 Cal. Rptr. 3d 543, 559-60 (Cal. Ct. App. 2004). This later opinion held that if the requirements of the preclusion doctrine are met, then a mandamus action will preclude further litigation. *Id.* at 559. The court said:

> We see no reason to distinguish between actions and special proceedings (see Code Civ. Proc., §§ 22, 23) for purposes of res judicata if the requirements of the doctrine are satisfied and if the issues asserted in the later proceeding could have been asserted in the prior proceeding. Application of res judicata in those circumstances serves the purposes of the doctrine, to prevent incon-

raised in this single cause of action may not be raised at a later date. *Id.*

MHC's claims in federal and state court all involve a single primary right: the right to receive a fair return on its investment at Westwinds. They all stem from a single injury MHC claims to suffer. *See Takahashi v. Bd. of Trs.*, 783 F.2d 848, 851 (9th Cir. 1986) (holding the plaintiff's statutory mandamus proceeding in state court barred the plaintiff's constitutional claims in federal court because both actions stemmed from a single primary right: the contractual right to employment). MHC's claims all relate to a single Ordinance and the City's application of that Ordinance to MHC's petition for a rent increase. MHC's different Counts[13] are simply different legal theories under which MHC may recover. Different theories of recovery are not separate primary rights. *Mycogen Corp.*, 51 P.3d at 307; *see also Slater v. Blackwood*, 543 P.2d 593, 594-95 (Cal. 1975) ("Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief."). MHC has already litigated its right to a fair return in state court. The state courts held that if MHC will estimate the 1985 financial figures for

---

> sistent rulings, promote judicial economy by preventing repetitive litigation, and protect against vexatious litigation.

*Id.* Moreover, it is well-settled by the California Supreme Court that "the doctrine of res judicata applies to judgments on the merits in proceedings in mandamus." *Hollywood Circle, Inc. v. Dep't of Alcoholic Beverage Control*, 361 P.2d 712, 715 (Cal. 1961). MHC's argument misrepresents California law on this matter. A mandamus action may, and in this case does, preclude further litigation.

[13]The Counts at issue here are: substantive due process (fair hearing, biased hearing officer, and arbitrary, capricious, and unreasonable burden); equal protection; as-applied takings claim for general application of the Ordinance; and facial takings claim. Claims related to the second homeowner exemption and the Individual Defendants are not affected by this analysis. Those are separate from the MHC's general claims against the Ordinance.

its mobilehome park, then MHC will receive a fair return. Additional theories of recovery based on MHC's right to a fair return may not be asserted in federal court.

**[4]** To adjudicate MHC's constitutional claims would require upsetting legal conclusions of the California courts regarding the Ordinance. The California Superior Court and the California Courts of Appeal both held the City's Ordinance allows MHC to receive a fair return. MHC need only estimate the financial figures for 1985, as both courts held MHC is capable of doing, to determine a fair return. As the district court recognized, "[T]his Court would be unable to pass judgment on MHC's claims without addressing the state court's determinations on those issues. Any remedy for Plaintiff on these claims would in effect nullify that judgment in violation of *res judicata*." *Manufactured Home Cmtys. v. San Jose*, 358 F. Supp. 2d 896, 906 (N.D. Cal. 2003). MHC's claims either have been or should have been raised in state court, and MHC is precluded from raising them in federal court.

**[5]** The Supreme Court very recently addressed res judicata in the context of a takings claim in *San Remo Hotel, L.P. v. City & County of San Francisco*, 125 S. Ct. 2491 (2005). There, much like here, the claims presented in federal court "depended on issues identical to those that had previously been resolved in the state-court action." *Id.* at 2495. We cannot consider MHC's claims without rejecting the California courts' conclusion that MHC will receive a fair return if it estimates the necessary financial figures. The district court's conclusion that Counts I, II, III, VII, and VIII of MHC's complaint are res judicata is affirmed.

## 3. Ripeness — Count IV

MHC's Counts IV, V, and VI were not dismissed under either *Rooker-Feldman* or res judicata. These claims were not pursued in state court, but were brought against the City and

the Individual Defendants in federal court for violations related to the second homeowner exemption under California state law. The exemption is part of California's Civil Code, not San Jose's municipal code. It exempts mobilehome owners who own second homes from rent control ordinances. Cal. Civ. Code § 798.21.

MHC believes that the Individual Defendants, four residents of Westwinds, are exempt from San Jose's rent control Ordinance as second homeowners. MHC notified those residents it was raising their rent. The City and the residents objected. The City told MHC that it had to go through the administrative process to raise the residents's rent. The City Attorney issued a letter opinion stating the residents were not subject to the statutory exemption. The Individual Defendants argued they qualified for exceptions to the second homeowner exemption under California Civil Code § 798.21(f).

MHC did not pursue a rent increase through San Jose's administrative process; instead it sued the City and the Individual Defendants in federal court. MHC claims the City denied procedural due process by rendering a final decision without notice or an opportunity to be heard (Count IV). MHC requested declaratory relief (Count V) and enforcement of the statutory exemption (Count VI).

The district court dismissed these claims as unripe under *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), and as failing to state a claim within the federal question jurisdiction of the court. MHC argues Count IV is not subject to the *Williamson County* ripeness test because Count IV is a due process claim, separate from MHC's takings claim. In the alternative MHC argues, that if the *Williamson County* test applies to Count IV, the City Attorney's letter was a final administrative action. *Id.* at 45-46. MHC believes it either fulfills or is exempt from fulfilling the *Williamson County* ripeness test.

**[6]** We need not decide whether Count IV is subject to the *Williamson County* ripeness test for takings claims because Count IV fails even the basic requirements of the ripeness doctrine, to which all claims in federal court are subject. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297-98 (1979). The Supreme Court has explained that the ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). Premature adjudication is exactly the problem plaguing MHC's due process claim: MHC never engaged in the administrative process. MHC never filed a petition to raise the Individual Defendants' rents. No final administrative decision exists for MHC's claims related to the second home owner exemption. If MHC files a petition, then the hearing officer may or may not grant the rent increase. Until MHC files the petition, there is no way of knowing whether a real case or controversy exists. Due process has not been denied because no process was pursued. MHC's due process claim is not ripe for adjudication.

The prudential aspect of ripeness is considered in a two prong test: "(1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 670 (9th Cir. 2005). Only four homes in MHC's 700+ unit mobilehome park are at issue under the second homeowner exemption. Nothing in the record suggests delaying resolution of this legal issue will significantly harm either party. MHC has not sought an administrative rent increase for the four homes. The interpretation of the statute is an issue of state law and no California court has interpreted that statute as applied in these circumstances. The fitness of these issues for judicial decision is poor, and the hardship to the parties is minor.

MHC's argument that the City Attorney's letter is a final interpretation of the City's law is belied by the plain language of the City's municipal code. Under the code only decisions by hearing administrators are binding and final. Opinions by the City Attorney are not endowed with any legal authority. Compare SJMC § 17.22.840 and SJMC § 17.22.1030. The City Attorney's letter is not a final administrative decision.

**[7]** MHC must pursue a rate increase for the Individual Defendants before pursuing these claims in federal court. This MHC has not done. Its claims related to the second homeowner exception are not ripe for review.

### 4. Federal question and supplemental jurisdiction — Counts V & VI

**[8]** MHC's Counts V and VI do not raise independent federal questions. MHC does not argue otherwise. In the absence of jurisdiction over Count IV, there is no federal jurisdiction over Counts V and VI. *See* 28 U.S.C. § 1367(a). However, even if the district court has jurisdiction over Count IV, the court may exercise its discretion to decline supplemental jurisdiction over Counts V and VI. 28 U.S.C. § 1367(c). The district court declined to exercise supplemental jurisdiction over Counts V and VI because the claims raise "novel" issues of State law. *Manufactured Home Cmtys.*, 358 F. Supp. 2d at 910 (citing 28 U.S.C. § 1367(c)).

MHC argues the California statute at issue does not present a novel or complex issue of law. The City and the Individual Defendants disagree. While the statute may not be complex on its face, the application of the law in these circumstances is uncertain. The second homeowner exemption does not apply to owners who are renting their mobilehome, Cal. Civ. Code § 798.21(a), and it does not apply if the mobilehome is for sale, *id.* § 798.21(f)(2).

The Individual Defendants argue the second homeowner exemption does not apply to them under these sections of the

statute. The four spaces challenged by MHC are either occupied by a co-owner, subject to a valid sublease, or held out for sale as of the original rent increase notice. Under these circumstances, the application of the exceptions to the exemption for rent control depends on how the statute is interpreted. No California state court has interpreted this statute for these purposes.

[9] The district court was correct to conclude that MHC's Counts V and VI raise novel issues of state law. The district court did not abuse its discretion in declining to exercise supplemental jurisdiction.

## 5.   Ripeness — Count VII

MHC made several arguments to support its as-applied takings claim under Count VII. The as-applied claim challenges the City's application of the Ordinance and the second homeowner exception. MHC argues the City's application of the Ordinance creates a sales premium for mobilehomes within Westwinds. This premium, MHC argues, impermissibly transfers property from MHC to the individual homeowners. MHC also argues the City's application of the Ordinance does not allow MHC a fair and reasonable return on its investment. Thus, MHC argues, the City fails to "substantially advance" the stated goals of the Ordinance or any other legitimate government interest.[14]

[10] Constitutional takings claims are subject to the *Williamson County* ripeness test. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). Under *Williamson County* there are two parts to establishing ripeness for a takings claim brought in federal court against a state or

---

[14]This claim is now foreclosed by the Supreme Court's decision in *Lingle v. Chevron U.S.A.*, 125 S. Ct. 2074, 2087 (2005) (holding the " 'substantially advances' formula is not a valid takings test, and indeed [ ] it has no proper place in our takings jurisprudence").

subdivision thereof. The first step requires that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* at 186. The second step requires the plaintiff to "seek compensation through the procedures the State has provided for doing so." *Id.* at 194.

[11] A petitioner need not seek state remedies if to do so would be futile. *Id.* at 194-95. The futility exception is narrow, and mere uncertainty does not establish futility. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1501 (9th Cir. 1990).[15] Under the exception:

> The landowner bears the burden of establishing, by more than mere allegations, the futility of pursuing any of the steps needed to obtain a final decision. Moreover, before claiming the exception, the landowner must submit at least one development proposal and one application for a variance if meaningful application and submission can be made.

*Id.* (citations omitted); *see also Carson Harbor Vill., Ltd. v. City of Carson*, 353 F.3d 824, 827 (9th Cir. 2004).

*Applied takings claims — General rent increases*

[12] MHC pursued its general rate increase claims through the administrative process provided by the Ordinance. The hearing officer twice denied MHC's rent increase. These actions are sufficient to fulfill the first prong of the *Williamson County* test for MHC's takings claims related to a general rent increase.

[13] As to the second prong, MHC claims to be excused

---

[15]*Del Monte Dunes* dealt with land use regulations but the same standards apply to rent control regulations. *See Amberhill Props. v. City of Berkeley*, 814 F.2d 1340, 1341 (9th Cir. 1987).

from seeking compensation because doing so would be futile. MHC argues that the City's hearing officer was financially biased against it and, as a result, California's *Kavanau* adjustment[16] is inadequate as compensation for MHC. MHC's argument that the hearing officer is biased is nothing more than speculation. Although the facts alleged by a plaintiff are assumed true under a motion to dismiss, this court need not accept baseless allegations as proof of futility. This court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (reviewing motion to dismiss for failure to state a claim under Rule 12(b)(6)). MHC's bias allegations, at best, produce uncertainty and uncertainty does equal futility. *See Del Monte Dunes*, 920 F.2d at 1501.

Moreover, "The Supreme [C]ourt has indicated that *at least one* application must be submitted before the futility exception applies." *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir. 1987); *see also Amberhill Props.*, 814 F.2d at 1341 (holding failure to seek a rent adjustment before bringing takings action makes a claim of futility wholly speculative). MHC did not pursue even a single petition for compensation.

**[14]** At this time, MHC is foreclosed from pursuing a futility exception from the *Williamson County* ripeness require-

---

[16]Under *Kavanau v. Santa Monica Rent Control Board*, 941 P.2d 851 (Cal. 1997), and *Galland v. City of Clovis*, 16 P.3d 130 (Cal. 2001), California's procedure for seeking just compensation after a local rent control board denies an adjustment requires petitioners to file a writ of mandamus in state court. If the writ is granted, the property owner may seek an adjustment of future rents before the local rent control board. The rent control board is supposed to take the past improper denial into account when calculating the future adjustment. The future adjustment is called a *Kavanau* adjustment. The writ and the *Kavanau* adjustment must be pursued before any inverse condemnation or § 1983 action may be pursued in state court.

ments. MHC's as-applied takings claim against the Ordinance is not ripe for review.

*Applied takings claims — Second homeowner exemption*

**[15]** MHC did not pursue any second homeowner exemption claims through the administrative process provided by the Ordinance. Instead, MHC says a letter from the City attorney was a "final decision" on this matter. In the alternative, MHC claims it would be futile to pursue these claims through the administrative process because the hearing officer was biased. As discussed above, neither of these claims have merit. *See infra* pp. 11182-84. The Ordinance does not grant any final or binding authority to opinions by the City Attorney. SJMC § 17.22.1040. MHC never petitioned the City to grant the second homeowner exemption nor did it make an application for compensation under the second homeowner exemption. MHC's as-applied takings claim regarding the second homeowner exemption is not ripe under either prong of the *Williamson County* ripeness test.

## 6. Statute of limitations — Count VIII

**[16]** MHC's facial takings claim asserts that the Ordinance fails to "substantially advance" a legitimate state interest. This claim is foreclosed by the Supreme Court's recent holding that the " 'substantially advances' formula is not a valid takings test, and indeed [ ] it has no proper place in our takings jurisprudence." *Lingle*, 125 S. Ct. at 2087. In any event, we would affirm the district court's statute of limitations decision denying relief.

## 7. Attorneys fees — District Court

The district court denied sanctions against MHC's attorneys under Rule 11 and granted the City of San Jose's attorneys' fees under Rule 54. Fed. R. Civ. Pro. 11 & 54(b). *Manufactured Home Cmtys.*, 358 F. Supp. 2d at 909. A dis-

trict court's decision to award attorneys' fees is reviewed for abuse of discretion. *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990).

[17] Defendants requesting attorneys' fees from a plaintiff in a civil rights action must meet a heightened standard. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). The Supreme Court said attorneys' fees should be granted to a defendant in a civil rights action "only if the District Court finds 'that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' " *Id.* "An appeal is considered frivolous in this circuit when the result is obvious, or the appellant's arguments of error are wholly without merit." *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 656 (9th Cir. 1984). The district court's order does not mention the heightened standard for awarding attorneys fees in this situation. *See Manufactured Home Cmtys.*, 358 F. Supp. 2d at 903, 909. Rather, it cites language similar to the *Hughes* language on attorneys' fees to deny Rule 11 sanctions. *Id.* at 909. It appears the district court overlooked the heightened standard set by the Supreme Court for awarding attorneys' fees and applied the wrong legal standard for granting fees. Applying the incorrect legal standard is an abuse of discretion. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004). We remand to the district court for a determination of whether granting attorneys' fees to the City of San Jose is proper in this case.

## 8. Attorneys' fees — Courts of Appeal

[18] The City's motion for attorneys' fees on appeal is denied. While the City is surely frustrated with MHC's unwillingness to estimate the financial data for Westwinds and instead to pursue this lengthy litigation, the claims MHC brought before this court are not wholly without merit. In light of the uncertainties in the law (*see Noel*, 341 F.3d 1148 and *Exxon Mobil Corp.*, 125 S. Ct. 1517), MHC had reason to appeal the district court's decision. MHC's appeal was not

"frivolous, unreasonable, or without foundation." *Hughes*, 449 U.S. at 14.

### 9. Motion for judicial notice

The City's motion for judicial notice of its Answer to MHC's petition for review in the California Supreme Court is granted. The City's Answer is helpful in considering matters related to preclusion in the state courts. In *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002), this court took judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes. Likewise, in this case judicial notice of the City's Answer is helpful for examining the claims litigated in state court.

### Conclusion

The district court's order dismissing MHC's complaint is affirmed as to res judicata, ripeness, California's statute of limitations, and failure to state a federal claim and lack of supplemental jurisdiction. The district court's order is reversed as to the *Rooker-Feldman* doctrine. The matter of attorneys' fees is reversed and remanded.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.